PIPKIN *v.* WILLIAMS.

Opinion delivered February 4, 1893.

1. *Homestead—Fraudulent conveyance.*

Since a creditor cannot resort to the homestead of his debtor to secure payment of his claim, he cannot complain of any disposition thereof which the debtor may have made.

2. *Conveyance of homestead—Non-joinder of wife.*

Under the act of March 18, 1887, which provides "that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity unless his wife joins in the execution of such instrument, and acknowledges the same," a deed purporting to convey the homestead of a married man is a nullity if his wife fails to join in the granting part of the deed, notwithstanding she releases her dower therein.

3. *Homstead—Void conveyance—Abandonment.*

When a married man conveys his homestead by a deed which is invalid by reason of the non-joinder of his wife in its execution, and, with his family, abandons the land as a homestead, the invalidity of the conveyance is not cured by the subsequent abondonment, and the land becomes liable to attachment or other process for the grantor's debts.

Appeal from Howard Circuit Court.

WILL. P. FEAZEL, Judge.

Action by J. B. and Alfred Williams, composing the firm of Williams Brothers, against James L. Pipkin and M. F. Lake, composing the firm of Pipkin & Lake.

Briefly, the case is as follows : On January 9, 1890, Lake, a married man, sold and conveyed the land in controversy, which constituted his homestead, to his partner, Pipkin, and delivered possession forthwith. The decision of the cause turns upon the validity or invalidity of the deed, which was in the following form :

"Know all men by these presents, that I, M. F. Lake, for and in consideration of $1000 to me paid by James L. Pipkin, the receipt whereof is hereby acknowledged, do hereby bargain, sell and convey unto the said James L. Pipkin and to his heirs the following described lands and tenements :" (Here follows description of land.) "To have and to hold to the said James L. Pipkin and to his heirs in fee simple forever. And I covenant with the said James L. Pipkin and with his heirs and assigns that I have a perfect right to all the above described lands, that they are free of incumbrance, and that I will and that my heirs and assigns and executors shall forever warrant and defend the title in and to the above granted premises against the lawful claims of all persons.

"And I, Mary M. Lake, wife of the said M. F. Lake, for and in consideration of the said sum of one thousand dollars, and for other good and valuable considerations, do hereby release and relinquish all my right, title, claim or possibility of dower in and to the above granted lands and tenements.

"Given under our hands, this the 9th day of January, 1890.

(SIGNED)                            M. F. LAKE.
                                    M. M. LAKE.

"STATE OF ARKANSAS, }
  COUNTY OF POLK.   }

"Be it remembered, that, on this the 9th day of January, 1890, before me, W. J. Davis, clerk of the Polk circuit court, personally appeared M. F. Lake, to me well known as the party grantor in the within and foregoing deed of conveyance, and acknowledged that he had signed and executed the same to the party therein named and for the purpose and consideration therein set forth, and I do so certify.

"And I do further certify that, at the same time and place, appeared Mary M. Lake, the wife of the said M. F. Lake, and, being by me examined separate and apart from her said husband, stated that she had voluntarily and freely signed the same without compulsion or undue influence on the part of her said husband. .

"In testimony whereof, I hereto set my hand and affix my official seal, this 9th day of January, 1890.

(SEAL)                    W. J. DAVIS, Clerk."

Subsequently, on January 15, 1890, plaintiffs brought this suit and caused the land described in the above deed to be attached as the property of Lake. On December 2; 1890, Lake and wife executed a second deed to Pipkin, presumably for the purpose of curing any supposed defect in the first. Pipkin interposed a claim for the property as against the attachment, and relied upon his deed of January 9, 1890. The court sustained the attachment as against Lake. On the trial of the title to the land, as between plaintiffs and Pipkin, there was verdict and judgment for plaintiffs. Pipkin has appealed.

The appellant *pro se.*

Exempt property is not the subject of fraudulent alienation. Lake could give away his homestead and his creditors could not complain. No consideration was necessary. Wait, Fr. Conv. sec. 46, p. 71, and cases cited 2, sec. 47, and pp. 64, 65, sec. 41; 44 Ark. 180; 52 *id.* 101.

*T. P. Winchester* for appellees.

The deed was void. Acts 1887, p. 90 ; 39 Ark. 434 ; 37 *ib*. 91 ; 30 *id*. 391 ; 2 *id*. 346 ; 32 *id*. 453.

HEMINGWAY, J., It seems to be conceded that, up to the 9th of January, 1890, the land in controversy was the legal homestead of the defendant, Lake. On that day he executed a deed of it to his co-defendant, Pipkin, and left it. On the 15th of January, 1890, the plaintiffs caused it to be attached as the property of Lake, and the attachment was sustained. Pipkin filed an interplea, claiming the property as against the attachment. He does not question the correctness of the judgment sustaining the attachment against Lake, but claims that he had acquired the property before the attachment issued, and that it was therefore not liable to levy or sale under process or judgment against Lake.

If he had in fact acquired the property, his position is well taken ; but if the deed of January 9th passed nothing, he shows no right to resist the sale of the land.

The court, in effect, charged the jury (1) that a partner could not claim a homestead exemption out of firm property as against firm creditors ; and (2) that if the deed to Pipkin was made without consideration, it was void as against the firm creditors.

It is here insisted, properly as we think, that there was error in each instruction. The property belonged to Lake individually, not to the firm ; the first instruction was therefore inapplicable to the case, and, being calculated to confuse, if not to mislead, the jury, should not have been given. The land was Lake's homestead, free from the claims of his general creditors, and he could sell it or give it away at pleasure, without prejudicing any right of theirs ; and if in fact he did sell or give it away by a conveyance valid as against himself, they could not attack it ; for, as they had no right to resort to

1. Right of debtor to convey homestead.

the land, they were deprived of nothing, and in no manner defrauded by any disposition he might have made. *Bogan v. Cleveland*, 52 Ark. 101. The second instruction was therefore erroneous in principle.

But although these errors were committed, it does not follow that the case should be reversed ; for if the interpleader showed that he had acquired no interest in the land, he was not prejudiced by the errors, and is in no position to ask a reversal. It therefore becomes necessary to consider whether the title to the land passed by the deed of January 9th, 1890; and if it did not, whether the deed of December 2d, 1890, which was designed to cure the former deed, passed the title as against plaintiff's intervening attachment.

2. Effect of wife's non-joinder in conveyance of homestead.

The first deed was sufficient to pass the title, if it was not void for a failure to comply with the provisions of the act of March 18th, 1887, entitled "an act to render more effectual the constitional exemption of homestead." Its provisions, in so far as they affect this case, are as follows : "That no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity, * * * unless his wife joins in the execution of such instrument and acknowledges the same." Acts 1887, p. 90. The question, then, is whether the deed met the requirements of this act, and, if not, how far it was void on account of its failure in that regard.

The requirements of the act are two : First, that the wife shall join in the execution of the deed ; and, second, that she shall acknowledge it. It demands substantive acts only, and prescribes no particular manner of performing them. If she actually join in executing the deed, and then acknowledge its execution before an officer authorized to certify acknowledgments, she has done all the substantive acts required, and as the statute prescribes no form or manner of doing them, there can be no

non-compliance with its provisions for matter of form merely. Whenever a substantial compliance appears, the statute is satisfied, and the deed will be valid. But, while form is immaterial, the acts prescribed are prerequisites, and where they do not appear in a deed, it comes within the condemnation of the statute. Under the rule stated, we can not find that Mrs. Lake joined in the execution of the deed. It is in form a deed poll, and its premises indicate that M. F. Lake is the sole grantor. The name of his wife does not appear in the granting part, nor elsewhere in the body of the deed ; it appears only after the usual covenants of warranty, in a clause which declares that she releases to the grantee all her right or possibility of dower. If this clause were not in the deed, it would perhaps be proper to hold that the fact of her signing it evidenced an intention to join in its execution, and give it whatever effect might legally result from her executing it ; but it expressly declares what her purpose was, and restricts the operation of the deed as against her to the release of her dower. It has been held, under statutes upon the same subject, for a similar purpose, and of like provisions to our own, that the grant should contain express reference to the homestead ; but a less rigorous rule perhaps prevails. *Dooley* v. *Villalonga*, 61 Ala. 129 ; *Poole* v. *Gerrard*, 65 Am. Dec. 481 and note 488 ; *In re Cross*, 2 Dill. 320. But, so far as our investigation has extended, no conveyance has been held valid, under a similar statute, in which the only mention of the wife as a grantor was in a clause whereby she expressly released her dower and nothing more ; and in a number of such cases it has been held that the deed was invalid. *Poole* v. *Gerrard*, 65 Am. Dec. 488, and note ; *Wing* v. *Hayden*, 10 Bush, 276 ; *McGrath* v. *Berry*, 13 Bush, 391 ; *Herbert* v. *Kenton Building Ass'n*, 11 Bush, 296 ; *Long* v. *Mostyn*, 65 Ala. 543 ; *Wilson* v.

*Christopherson*, 53 Ia. 481; *Greenough* v. *Turner*, 11 Gray, 332.

As the cases cited seem to reflect an established rule, and be right upon principle, we think the deed invalid because Lake's wife did not join in its execution. It is perhaps proper to say that, as it appears, from the certificate of an officer authorized to take acknowledgments of deeds, that she stated to him that she had voluntarily signed it, we are of opinion the acknowledgment is sufficient, within the statute under consideration, notwithstanding it is not in the form which the statute prescribes in other cases, and might not be sufficient to bar her right of dower.

As the deed did not answer the requirements of the statute, the question is, how far it was invalid; whether it was valid, according to its import, except as against those entitled to claim the homestead exemption, or as a conveyance of the fee subject to the right of homestead.

This branch of the case has been the subject of much discussion among the judges, and the brevity with which it is here treated is in marked contrast with the time consumed and the authorities read and considered in the course of determining it.

The language of the statute is that no deed not made as it prescribes " shall be of any validity." If the terms be given their natural signification, such deeds are made invalid to every extent and as to all persons ; for, if they are held to carry the reversion, or to be operative as against any person or class of persons, they are to some extent valid, and not, as the statute ordains they shall be, without " any validity."

The decided weight of authority is that such deeds are void absolutely, not relatively; that they are mere nullities, and leave the property as if they had not been made. *Jenkins* v. *Harrison*, 66 Ala. 345; *Long* v. *Mostyn*, 65 Ala. 543; *Richardson* v. *Woodstock Iron Co.* 8 So.

Rep. 7; *Alley* v. *Bay*, 9 Ia. 509; *Goodrich* v. *Brown*, 63 Ia. 247 ; *Bruner* v. *Bateman*, 66 Ia. 488; *Morris* v. *Ward*, 5 Kas. 239 ; *Ott* v. *Sprague*, 27 Kas. 620 ; *Lear* v. *Totten*, 14 Bush, 103 ; *Tong* v. *Eifort*, 80 Ky. 153; *Richards* v. *Chace*, 2 Gray, 383; *Eldridge* v. *Pierce*, 90 Ill. 474 ; *Dye* v. *Mann*, 10 Mich. 291 ; *Amphlett* v. *Hibbard*, 29 Mich. 298–305; *Sherrid* v. *Southwick*, 43 Mich. 515; *Cummings* v. *Busby*, 62 Miss. 195 ; *Ferguson* v. *Mason*, 60 Wis. 389.

It has been held by several courts, whose opinions are entitled to and receive great respect, that such deeds are invalid only in so far as they attempt to convey the homestead right, or vest the right of possession while the homestead continues ; and that they are valid as conveyances of the estate, subject to such right, and vest a right to possession when the right of homestead expires. *Smith* v. *Provin*, 4 Allen, 516; *Gunnison* v. *Twitchel*, 38 N. H. 70; *Brown* v. *Coon*, 36 Ill. 243; *Stewart* v. *Mackey*, 16 Tex. 58.

There are several objections to adopting that construction of our statute.  In the first place, it is not the natural import of the terms used ; in the second place, it would hinder, rather than promote, the design of the law, by enabling the husband alone to alien the fee, and thereby impair the value of the exemption, and jeopardize the permanent enjoyment of a homestead, which the law designed should not be parted with without the wife's concurrence ; in the next place, this court held, under a somewhat similar provision in the constitution of 1868, that mortgages were void *in toto*, and not void only in so far as they affected the homestead right; and in the last place, it is the policy of our homestead laws to protect the title, as well as the possession and use, of the homestead, as is shown in the rule that forbids the sale of the reversion, either under execution during the husband's life, or under order of the probate court after

his death.  We cannot, therefore, adopt this construction.

The construction which would hold the deed void as to those entitled to the exemption, but valid as to others, is liable to the objection that it validates for many purposes what the statute says shall not be valid for any purpose; and, moreover, is directly opposed to the construction that had been placed upon similar statutes in other States before ours was adopted.  *Bolton* v. *Oberne*, 44 N. W. Rep. 547; *Alford* v. *Lehman*, 76 Ala. 526; *Richardson* v. *Woodstock Iron Co.* 8 So. Rep. 7; *Richards* v. *Chace*, 2 Gray, 383.

But another objection to that interpretation, more cogent in the minds of some of the judges than those mentioned, is that it would permit the husband to hold as exempt from his debts property not otherwise exempt, merely because it had once been his homestead, and he had made an attempt to convey it.  If the deed was void as to him, the land remained his after the deed was made; and if he removed from it, and it ceased to be his homestead, it would, under the general law, become liable to his debts; but if the deed is held operative as against his creditors, they are precluded from enforcing their claims against it, although he might be at liberty to recover it at will.  The legislature certainly never intended, by the act under consideration, to preserve the property in him and also to exempt it from liability for his debts when it ceased to be his homestead; for this would give to a deed declared to be invalid merely the effect to preserve a valuable exemption that would otherwise be lost by removal; and as the terms of the act do not import such intention, it should not be given that meaning by construction.

3. Effect of debtor's abandonment of homestead.

Our conclusion is that the deed, as a grant, was a nullity, and left the title as though it had never been made.  What effect then had the deed of December, 1890?

When the homesteader, with his family, abandoned the land as a homestead, it became liable to attachment for his debts; and when the attachment was sustained, it related back to the date of the lien of the writ, ante-dating this deed, and gave plaintiffs a lien prior in law to the title acquired under it.

Under any view of the case, the interpleader asserted no right that was in law prior to the lien of the plaintiffs' judgment, and could not have been prejudiced by any error in instructing the jury. The judgment was right, and is therefore affirmed.