## BANK OF HARRISON *v.* GIBSON.

### Opinion delivered February 23, 1895.

1. *Curative act—Vested rights.*

The effect of the act of April 13, 1893, which provides that conveyances of homesteads which are defective by reason of the act of March 18, 1887, "are hereby declared as valid and effectual as though said act had never been passed," was to render prior conveyances of homesteads which were invalid under the act of 1887 as valid between the parties as if executed before the passage of that act; but the vested rights of third persons, acquired between the dates of passage of the two acts, were not affected by the last act.

2. *Homestead—Form of conveyance.*

Under the act of March 18, 1887, providing that "no conveyance, mortgage or other instrument affecting the homestead of any

60  269
62  324
62  433
60  269
64  57
64  495
60  269
66  79
60  269
69  617
60  269
73  520

married man shall be of any validity, * * unless his wife joins in the execution of such instrument and acknowledges the same," *held* that the wife must not only join in the execution of such a conveyance, but she must also acknowledge that she had executed it, and her mere acknowledgment that she had signed a relinquishment of dower is insufficient.

3. *Usury—Place of contract.*

Where a proposition to lend money was accepted by the lender in another State, where he resided, and where the contract was, by its terms, to be performed, the contract is governed by the laws of that State.

Appeals from Boone Circuit Court in Chancery.

BRICE B. HUDGINS, Judge.

### STATEMENT BY THE COURT.

The first one of these two suits was instituted in the Boone circuit court in chancery by the appellees, T. M. Gibson and wife, against the appellant, Bank of Harrison, as the assignee of one T. E. Garvin, and as such the holder of a note and mortgage executed and delivered by them to said Garvin. The history of this suit is briefly as follows, to-wit: One F. M. Garvin, a son of T. E. Garvin, and one Duncan were doing business at the town of Harrison in said county, under the corporate name of the "Harrison Investment Banking Company," and it appears that a part of the business of the concern was to negotiate loans for people who sought their services in that line.

Some time, say in June or July, 1887, the appellee, T. M. Gibson, being in need of money to settle some fines and costs, and perhaps other matters, and, after some efforts in other directions, finally engaged the company named to effect a loan of a thousand dollars, engaging at the same time to give a mortgage on certain real estate he then owned, and which turned out to be the lands he resided on as his homestead, to whoever would loan him the money required. As the manner of such institutions is, the Investment Company, through

its active manager or secretary, the said F. M. Garvin, proceeded to have the title to the land examined, and to make an abstract of the same. In the meantime, appellees signed an application for the loan, in which the usual statements were made in regard to their ability to pay and meet their obligations, and the value of the security to be given. It appears that copies of this application were sent to various money lenders in different parts of the country—one to T. E. Garvin, residing in Evansville, Ind.; one to another party in the same place; one to Gettysburg, Pa.; and others to other points. These efforts finally resulted in an acceptance on the part of the said T. E. Garvin of the proposition to make the loan to appellees on the terms and security offered by them. T. E. Garvin seems to have entrusted to his son, the said F. M. Garvin, the duty of seeing that proper instruments of writing, were executed, and of approving or rejecting the security, so far as its value was concerned.

According to the proposition so made and accepted as aforesaid, the note and mortgage were executed actually on the 30th July, 1887, but dated the 15th July, for reasons given in testimony explanatory of the discrepancy; and the amount of money actually paid Gibson, and for him in the settlement of certain urgent demands in the hands of the sheriff of that county, was $950, instead of $1000, as the face of the note showed; F. M. Garvin having reserved $50 for his commission for effecting the loan, examining titles, making the abstract, and certain expenditures by him made. The mortgage having been recorded, the original of the same and the notes were transmitted to T. E. Garvin, at Evansville, Ind., his place of residence, and they were subsequently assigned for value to the Bank of Harrison, which had in the meantime become the successor of the Harrison Investment Company, as claimed by Gibson.

Proof of the existing laws of Indiana on the subjects of interest and usury was duly made, and copies of the same are made part of the transcript in the case.

T. E. Garvin, Catherine Duncan, his immediate assignee, and the Bank of Harrison, the holder of the note and mortgage, were made parties defendant, and all answered; Garvin and Duncan disclaiming all present interest in the suit, and the bank making its defense on the note and mortgage and the facts in support of the validity thereof, and filing a cross-bill, praying foreclosure of its mortgage.

The object of the bill of plaintiffs was to have the mortgage declared invalid, on the grounds that the lands included therein constituted part of the homestead of Gibson, and that the wife had not joined with him in the conveyance of the same in the mortgage, as required by statute; and on the further ground that the transaction with T. E. Garvin, in the consummation of which the note and mortgage were given, were in fact usurious.

The decree of the court as to the mortgage of the homestead was for the plaintiffs, holding the same to be void; and on the question of usury it was for the defendant bank, holding that the transaction was not usurious. From this decree the bank appeals to this court.

The second of these was instituted against Gibson and wife and the Bank of Harrison as the makers and holder of the note and mortgage involved in the first one, in which the same attacks were made on that note and mortgage as were made by Gibson and wife in the said first suit. The basis of the second suit was a note by Gibson and wife to the Boone County Bank for the sum of five hundred dollars, dated 26th day of June, 1890, and mortgage of same date, and on the same lands as were included in the mortgage involved in the first suit—that is, the homestead of Gibson—given to secure the note.

The suit was for foreclosure, and the validity of the note and mortgage were not called in question, and Gibson and wife suffered decree by default. Decree for plaintiff in effect as against the Bank of Harrison, the same as in the first suit, from which the defendant bank appealed to this court.

The two suits were submitted together, and came up for hearing as one case, on the same abstracts and briefs.

*Crump & Watkins* and *Rose, Hemingway & Rose* for appellants.

1. The decree in the first case must be reversed, because, pending the appeal, the act of April 13, 1893, was passed, curing defective conveyances of homestead. Acts 1893, p. 303; 23 S. W. 648.

2. As to the Boone County Bank, whose mortgage was executed before the passage of the act—the act only requires the wife to "join in the execution" of the deed, and to "acknowledge the same." Acts 1887, p. 90. In this case she complied with the act. That is sufficient. 57 Ark. 246. No express relinquishment of the homestead is required. Smith on Exemption, sec. 245; Waples on Homestead, p. 374; 86 Ala. 211; 82 *id.* 315; 84 *id.* 314; 81 *id.* 357; 55 *id.* 322; 86 Tenn. 457; 37 N. W. 491, S. C. 23 Neb. 579; 16 S. W. 277; 13 *id.* 914; 11 Iowa, 375; 15 *id.* 5; 13 Cal. 643; 13 Mo. App. 576; 6 S. W. 777, S. C. 69 Tex. 462; 41 Ark. 101; 51 *id.* 419.

*W. F. Pace* and *Dan W. Jones & McCain* for appellees.

1. The contract was purely an Indiana contract, and the law of Indiana must govern. 44 Ark. 234; 47 *id.* 58. By the Indiana law a note bearing ten per cent. interest is usurious, and works a forfeiture of all interest over and above six per cent. As to usury a note is governed by the law of the State where payable. 26

Ark. 356; 33 *id.* 645; 35 *id.* 55. But the validity of the mortgage is governed by the *lex rei sitae.* 47 Ark. 262; 35 Ark. 217; 18 *id.* 456.

2. The land was a homestead, and the act of 1887 was not complied with. A mere dower clause in the acknowlegement is not sufficient. 51 Ark. 419; 57 Ark. 242; Thomps. on Homest. secs. 526–532; 10 Bush, 280; 83 Ky. 620; 2 Allen (Pa.), 202; 95 Ala. 514.

3. The curing act could not affect vested rights. 57 Ark. 246.

*Crump & Watkins* and *Rose, Hemingway & Rose* for appellants in reply.

1. The question of usury is settled by 56 Ark. 513; 17 Am. & Eng. Enc. Law, 356.

2. When the lender resides in one State and the borrower in another, they may stipulate for the highest rate of interest allowed by the laws of either. 96 U. S. 51; 1 Wall. 298; Perley on Int. 189; Mansf. Dig. sec. 4736.

BUNN, C. J. (after stating the facts). First. As to the execution of the mortgage to the Bank of Harrison.

By the provisions of section 1 of an act entitled "An act to render more effectual the constitutional exemption of homesteads," approved March 18, 1887, (see acts of 1887, page 90), "no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity, except for taxes, laborers' and mechanics' liens and the purchase money, unless the wife joins in the execution of such instrument and acknowledges the same." By section 1 of an act entitled "An act to cure defective conveyances and acknowledgments," approved April 13, 1893, it is provided "that all deeds, conveyances, instruments of writing affecting or purporting to affect the title to the real

estate, which have been executed since the 18th day of March, 1887, and which are defective or ineffectual by reason of section one (1) of an act entitled 'An act to render more effectual the constitutional exemptions of homesteads, approved March 18, 1887' be and the same, and the record thereof, are hereby declared as valid and effectual as though said act had never been passed." See Acts of 1893, page 303.

The mortgage in question was executed since the 18th of March, 1887, and, as to and between the parties thereto, comes under the provisions of the curative act of April 13, 1893. Construing the mortgage, then, as if the act of March 18, 1887, had never been passed, we have only to inquire if it would have been valid as a conveyance of the husband's lands before the passage of that act, and this inquiry can have but one result, and that is that the mortgage is good—that is to say, as between the parties to it.

The status of this mortgage as affecting the Boone County Bank presents a question more difficult of solution. In *Sidway* v. *Lawson*, 58 Ark. 117, in construing the two statutes under consideration, the court, among other things, said, in effect, that the curative statute could not affect the vested rights of third parties ; that is to say, rights acquired between the passage of the two acts. Such is the status of the Boone County Bank in this litigation ; for its note and mortgage were executed, and the latter filed for record, on the 26th of June, 1890. This leads us to a consideration of the mortgage and its execution, in the light of the homestead act of March 18, 1887.

First, then, we will say that the form of the mortgage in question, and the certificates of acknowledgment of the husband and wife, are substantially the same as they are in any case of the conveyance of the husband's lands by husband and wife. The wife's name appears

1. Effect of curative act on vested rights.

2. Conveyance of homestead held invalid.

along with her husband's in the granting clause; then she makes her specific relinquishment in a separate clause, and, as is the case generally, toward the end of the deed; and, lastly, the husband acknowledges that he has executed the deed as appears in the granting clause; and the wife, separately and apart from him, acknowledges that she has signed the relinquishment of the dower as expressed in the deed, and for the purposes therein contained and set forth. No one, before the passage of the homestead act of March 18, 1887, would have contended that the wife, by such an instrument and acknowledgment, had done any thing more than released her inchoate dower right; that she had parted with any greater estate or interest than that of dower, notwithstanding her name appeared with her husband's in the granting clause, in which he conveyed the fee—the larger estate.

Evidently her name appears in such a connection along with that of her husband, not that the language of the granting clause is descriptive of the estate she intends to convey, or the right she intends to convey, or the right she intends to relinquish, but rather as a literal compliance with the statute which provides that she may relinquish her dower in her husband's lands "by joining with him in a deed of conveyance thereof." Now a somewhat similar provision is found in the act of March 18, 1887, except that it said that the husband's conveyance of the homestead shall be invalid "unless his wife joins in the execution of such instrument, and acknowledges the same." It seems to us that if she joins in the execution of the instrument, and acknowledges the same, she must of necessity acknowledge that she executed the same, and not that she had signed the relinquishment of dower expressed by her in the deed, as

in the case under consideration. As to the dower, she relinquishes; as to the homestead, she executes a conveyance.

In rendering its decision in the case of *Pipkin* v. *Williams*, 57 Ark. 242, this court took occasion to say that if the wife "actually join in executing the deed, and then acknowledge its execution before an officer authorized to certify acknowledgments, she has done all the substantive acts required, and as the statute prescribes no form or manner of doing them, there can be no non-compliance with its provisions for matter of form merely." This statement of the court is cited by counsel for appellant bank in support of its contention that, in the absence of form requirements, the doing of the substantive acts designated in the statutes is sufficient. That is true, but the statement has a wider meaning than that. It shows that a joining with the husband in the execution, and also an acknowledgment of such execution (not a mere relinquishment of dower), are all that is required, and it plainly shows that these two things are required to be done. So in the numerous cases cited from other States by counsel in support of their particular contention that, since the act does not specifically require it, the homestead, as such, need not be specifically named. Those decisions will support that particular contention, but they at the same time show that there must be both a joining with the husband in the execution of the deed and also an acknowledgment of such execution. We have been unable to find any case in which it is held that a mere acknowledgment of the relinquishment of dower will be sufficient under the statute.

We think, therefore, that the execution and acknowledgment by the wife of the mortgage in question was not a sufficient compliance with the act of March 18, 1887, and that for that reason the same is invalid as

against the Boone County Bank, the owner of the second mortgage, though valid as between the parties, by reason of the curative act of April 13, 1893.

3. Usury determined by law of place of contract.

Secondly, as to the charge of usury.

While the circumstances are such as to give rise to suspicions, yet we are inclined to agree with the chancellor that F. M. Garvin, in effecting the loan from his father to Gibson, acted as the agent of the borrower. It would perhaps be giving an undue and unfair weight to his relationship to T. E. Garvin to say that, notwithstanding his professions and pretenses to the contrary, he was, after all, but the secret agent of his father, aiding him to invest the money he was fortunate enough to possess. The son, with his associates, was in a business entirely disconnected with his father, one of the features of which, if not the main feature, was to effect loans for borrowers, charging for their services. He was entitled to the honorable rewards of his business, and we do not think that the $50 he reserved for these services and his expenditures in the matter are a part of the interest T. E. Garvin contracted to receive for the use of his money, nor do we find that the evidence as to usury in any other respect is sufficient to sustain the charge—that is to say, under the laws of this state.

But we do not think this transaction is to be governed by the laws of this State in relation to the intent part of it. We think it purely an Indiana contract. The proposition to borrow the money was accepted in Indiana, and the contract was there consummated by that act; and since, by its terms, it was to be performed there, it does not belong to that class of contracts, made in one State and to be performed in another, where the parties have an election.

The proof shows that, by the laws of Indiana, six per centum is allowed when there is no contract as to

rate, and eight per centum may be contracted for ; but if parties contract for a greater rate than eight per centum, all interest in excess of six per centum is forfeited. The judgment in favor of the Bank of Harrison and against Gibson should have been for the note and, in effect, six per cent. interest.

The costs of these cases are to be distributed as follows, to-wit : Gibson is to pay all cost of the first suit in the court below, and the Bank of Harrison to pay the cost in the second suit in the court below ; the costs of this court in the first suit to be divided equally, in the second suit the costs will be adjudged against the Bank of Harrison.

The decree of foreclosure of second mortgage, and giving it priority over the first mortgage, is affirmed ; but, in so far as the decree below, in the first suit, makes the first mortgage invalid between the parties, and denied the prayer of the cross-bill to foreclose, it is reversed, and it is modified as to the amount of the judgment in the first case as stated.

The causes are remanded, with direction to have the decree of foreclosure executed ; the proceeds of the sale of the property to be appropriated to satisfaction of the second mortgage and costs as stated ; secondly, to the payment of the first mortgage debt and cost of first suit and half cost as suggested, and residue to Gibson.