ALKIRE GROCERY COMPANY *v.* JACKSON.

Opinion delivered May 13, 1899.

HOMESTEAD CONVEYANCE—FRAUD.—In 1888 a father conveyed his homestead to his two sons, but his wife failed to join in its execution. In 1892 one of the sons, being insolvent, conveyed his half interest in such homestead without valuable consideration to his mother. *Held*, (1) that while the first conveyance was void under the act of March 18, 1887, it was validated by the curing act of April 13, 1893; (2) that the second conveyance was fraudulent. (Page 457.)

Appeal from Benton Circuit Court, in Chancery.

EDWARD S. McDANIEL, Judge.

*W. L. Stuckey* and *L. H. McGill*, for appellant.

A fraudulent conveyance passes no title, as against creditors affected thereby. Bump, Fr. Conv. §§ 451, 468. The curative act of April 13, 1893, (Sand. & H. Dig. § 743) validated all conveyances avoided by Sand. &. H. Dig. § 3713; 58 Ark. 117; 60 Ark. 269. The conveyance to the mother was simply a cloud upon appellant's title, and the better practice was to remove the cloud before proceeding to sell the property on their judgments. Wait, Fr. Con. § 60; 33 Ark. 328.

*T. M. Gunter*, for appellees.

There was no fraudulent conveyance. Bump. Fraud. Conv. §§ 21, 535. No subsequent act or circumstance can make an originally good conveyance fraudulent. *Id*. 33. All conveyances affecting the homestead of a married man are rendered invalid by the act of March 18, 1887, unless the wife joined in the conveyance. Sand. & H. Dig. § 3713. Subsequent abandonment of the homestead could not validate the conveyance. 57 Ark. 242. If the act of 1893 operated to validate the conveyance of the homestead, it immediately passed the title on to the mother. 5 Ark. 693; 33 Ark. 251; 15 Ark. 73.

BUNN, C. J. The plaintiff and appellant company—a Missouri corporation—recovered a judgment against the defend-

ant—the appellee—John T. Jackson, in the sum of $640, and costs, in the Benton circuit court, on the 8th of October, 1894, and on the 24th of November, 1894, filed its bill, with proper allegations, to set aside a certain conveyance made by said defendant to his mother, and to subject the lands so conveyed to the satisfaction of its said judgment. The defendant, John T. Jackson, and his mother, Elizabeth Jackson, (made also a party defendant in the bill) filed their answer, and the cause was heard upon the pleadings and testimony in the case, and the chancellor found that the conveyance from John T. Jackson to his mother was fraudulent and void as to his creditors, but that his deed from his father, made some years previously, was void, and that therefore he conveyed nothing to his mother, and so dismissed the bill for want of equity, and the plaintiff company appealed.

The history of the case in brief is as follows: Andrew Jackson, the husband of Elizabeth Jackson, and the father of John T. Jackson and N. S. Jackson, was the owner of the lands in controversy, and occupied the same as his homestead, being married and the head of family as aforesaid, and the same was a rural homestead containing 120 acres, and valued at a sum less than $2,500, and on the 27th of September, 1888, subsequent to the passage of the homestead act of 1887, he conveyed to his two sons, the said N. S. and John T. Jackson, for a nominal consideration, his said homestead, and his wife did not join therein, as required by said act, in order to make the deed valid.

In the years 1890 and 1891, at Maysville in Benton county, the said N. S. Jackson and John T. Jackson composed a mercantile firm and partnership, and carried on business as such, and failed, being indebted to the appellant company, as stated, and perhaps other creditors, and were insolvent.

The plaintiff first brought suit in the Benton circuit court on the 4th of December, 1891, for this debt, against N. S. Jackson and Andrew Jackson as partners. N. S. Jackson made default, and judgment was rendered against him, but Andrew Jackson, the father, having made showing that he was not a member of the partnership, and was not therefore responsible, and John T. Jackson having informed plaintiff's counsel that

he ,and not his father, was a member of the firm, or had. been during the period of its existence, the cause was dismissed as to Andrew Jackson, without prejudice; and on the 9th day of March, 1893, plaintiff brought this suit against said Andrew and John T. Jackson, for said debt, in said circuit court and on the trial by jury verdict and judgment was for Andrew Jackson, upon his defense that he was not a partner in said partnership, the final judgment was taken by default against the said John T. Jackson, and still remains unsatisfied and unreversed.

John T. Jackson, in this cause, shows that he was a minor during the life of this partnership, which ended the 10th of March, 1891, and that he was born in July, 1870, and did not reach his majority until July, 1891, after the close of the partnership, but the judgment was against him upon suit filed after his arrival at his majority, and upon due personal service, and no defense of any kind was made thereto. There is, therefore, nothing in this plea of infancy. On the 27th of September, 1892, the suit against Andrew and N. S. Jackson was dismissed without prejudice as to Andrew Jackson, on it being suggested that John T. Jackson had been a member of the firm of N. S. Jackson & Co., and on the 9th of March, 1893, the suit was instituted against Andrew and John T. Jackson, and judgment afterwards taken by default against the latter. Between the dismissal of the one suit and the institution of the other, John T. Jackson conveyed his half interest in the homestead to his mother, to-wit: the 27th day of September, 1892, the very day upon which the first suit was dismissed as to Andrew Jackson as aforesaid. The court found that this deed was without consideration, and was executed in fraud of the creditors of John T. Jackson.

On the other hand, the appellee contend that Jno. T. Jackson had nothing to convey by his deed to his mother, his deed from his father being void under the act of 1887, under which only he held; and the circuit court in chancery sustained this view of it.

While it is true that the deed of 1888 from father to the sons was void under the act of 1887, the wife not having joined in the execution of it, the same was validated, as a conveyance

from the father alone, by the subsequent act approved April 13, 1893. Therefore, subject to his mother's dower yet inchoate (for she had never signed her relinquishment of it), John T. Jackson was the owner of an undivided one-half interest in this homestead—a half interest of all that the father had therein—at the time he undertook to and did convey to his mother. Being in debt and insolvent at the time, his voluntary conveyance of his interest in this property was, as found by the circuit court, fraudulent as to his creditors, and therefore void as to them. But the circuit court erred in holding that he had nothing to convey, when he conveyed to his mother; for, while his title was at first void, it was subsequently (and before the rendition of the judgment against him) made valid by removal of the legal obstacle to its validity, and in this shape was conveyed to his mother—a valuable subsisting right in the lands.

His interest in said lands should have been made subject to sale under execution upon appellant's judgment by the court below, and, failing to so decree, there was error in the decree rendered. The decree is therefore reversed, and the cause remanded, with directions to order a sale of John T. Jackson's one-half interest in said lands, subject to the dower interest of the mother, and for such other proceedings as may not be inconsistent herewith.