McLeod *v.* McLeod.

Opinion delivered October 15, 1917.

HOMESTEAD GIFT.—A husband and father cannot make a gift of a portion of his homestead without his wife joining in the same.

Appeal from Bradley Chancery Court; *Zachariah T. Wood,* Chancellor; reversed.

*J. R. Wilson,* for appellants.

1. There was no real contract between father and son, no meeting of minds of these two parties, and there was no such contract as could be enforced. W. A. McLeod was a minor.

The land was a part of the homestead, and was so impressed. The wife never joined in any deed nor relinquished her dower. 126 Ark. 182; 56 Ark. 146; 71 *Id.* 283; 108 *Id.* 53; 95 Am. St. Rep. 928; 113 Am. St. Rep. 802; 39 Cyc. 1217; 33 Ark. 399; 29 *Id.* 280; 123 Ark. 200; 113 Ark. 134.

2. The contract was not enforceable by specific performance, as it was part of the homestead. Mrs. McLeod was not bound as she was not a party to any such contract.

*J. S. McKnight* and *C. L. Poole,* for appellee.

No further contract than the gift to the son was necessary. The burden was on appellants to show that the land was part of the homestead. The widow can not create a homestead right after the death of her husband. He must have impressed the homestead character upon it during his life. 33 Ark. 399; 31 *Id.* 145; 29 *Id.* 280; 41 *Id.* 94.

The land was given to the son and he took possession, cultivated and improved it long before his father's death. The chancellor was right in his findings.

STATEMENT BY THE COURT.

Mrs. M. J. McLeod for herself and for John McLeod and Frank McLeod, her minor children, instituted this action in the chancery court against W. A. McLeod to

restrain him from entering upon or otherwise interfering with their possession of a certain forty acres of land which she claims to be a part of the homestead.

The defendant answered, denying that the land was a part of the homestead of his mother and her minor children and setting up title in himself by gift from his father in his lifetime. The facts are substantially as follows:

D. W. McLeod owned nine forty-acre tracts of land situated in a body in Bradley County, Arkansas. His dwelling house and outhouses were situated on a forty-acre tract adjoining the one in controversy and just east of it. There was a large field near the dwelling house and about ten acres of this field was on the land in controversy. D. W. McLeod died June 20, 1915, and had lived on the land about twenty years prior to his death. He left surviving him his widow, Mrs. M. J. McLeod, and two minor children, viz.: Frank, fifteen years of age, and John, fourteen years of age, and several adult children. The defendant was one of his adult children.

According to the testimony of the plaintiff, the land in controversy was a part of the homestead. A detailed statement of the testimony on this point will be stated in the opinion.

According to the testimony of the defendant he cultivated a part of the land in question in the year 1911. During the summer his father gave him the land and he said his mother acquiesced in the gift. He further testified that he remained in possession of the land from that time until his father's death; that for the two years prior to his father's death, he did not cultivate the land and permitted his father to collect the rents therefrom; that no conditions were attached to the gift of the land.

Several other witnesses testified that D. W. McLeod in his lifetime told them that he had given the land in controversy to the defendant, his son, and that he did not speak of any conditions being attached to the gift. The defendant cleared up about three acres of the land and this was worth $10.00 per acre. According to his

testimony he also placed nine rolls of wire in a fence around the land and the improvements made by him on it were worth $150.00. He said the rental value of the land was $2.00 per acre. Ten acres of the land was in cultivation and according to the testimony of two of his brothers, its rental value was four or five dollars per acre. One of his brothers also put the value of the fence at less than one-half of what he estimated it to be. The defendant placed about two thousand feet of lumber on the land and five hundred feet of it was used by his foster brother and the remaining fifteen hundred feet by his father. No deed was ever executed to the defendant for the land. During his father's last illness the defendant tried to get his mother to have his father execute a deed to him to the land, but she refused to do so. The request worried his father a great deal and he refused to make the deed, saying that the land was his homestead and that he had in the first instance given the land to the defendant on condition that he would establish himself a home there; that the defendant had failed to build a home on the land, but on the contrary had abandoned it and had forfeited all his rights thereto.

Other testimony will be stated or referred to in the opinion. The chancellor found that the land had never constituted a part of the homestead of D. W. McLeod; that he had given the land to the defendant in his lifetime and put him in possession of it and the title to the tract of land was quieted and confirmed in the defendant. The case is here on appeal.

HART, J., (after stating the facts).

Section 3901 of Kirby's Digest being an act of March 18, 1887, provides in effect that no conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity unless his wife joins in the execution of such instrument and acknowledges the same. Under this statute we have always held that a deed purporting to convey the homestead of a married man is a nullity if his wife fails to join in the

execution of the deed. *Pipkin* v. *Williams,* 57 Ark. 242; *Oliver* v. *Routh,* 123 Ark. 189, and cases cited, and *Waters* v. *Hanley,* 120 Ark. 465.

In the last mentioned case we held that a husband cannot make a contract to convey the homestead which will be binding upon his wife. The court said:

"It is clear that if the husband cannot make a conveyance of the homestead without the concurrence of his wife, he cannot make a contract to convey the homestead which will be obligatory upon his wife. If he could make a contract to convey the homestead which would be obligatory upon his wife the statute could be easily evaded and would be of no force."

The defendant testified that his father gave him the forty-acre tract in controversy and put him in possession of it. He said that his mother acquiesced in the gift, but does not claim that she participated in the transaction.

On the other hand, his mother testified that she did not in any way participate in the gift and that the land in question was a part of their homestead.

It is insisted by the defendant that the land was not a part of his father's homestead; that his father did not attempt to impress it with the homestead character until just before his death in June, 1915, and that he had given the land to him in August, 1911, and that he continued in possession of it up to the time of his father's death. In support of this contention, counsel point to the testimony of the plaintiff herself. On cross-examination after answering that the land was all in a solid body, she was asked the following: "Now, at what time did you make a selection of the forties involved in this suit as your homestead and dedicate it as such? A. Well, of course, I made the selection—when my husband knew he was going to die he made the selection and that has been my selection all the while there."

When her testimony is considered as a whole, we do not think that it is susceptible of the construction that she and her husband had not intended to impress the

land in controversy with the homestead character until after the husband had given it to the defendant and had placed him in possession of it. The forty acres in controversy and the forty acres on which their dwelling house stood were adjoining forties. They had been purchased at about the same time. McLeod had lived on one of these forties for over twenty years prior to his death. There was a field which extended in part over both forties and this was the main field in cultivation on the lands. At another place in her testimony the plaintiff said that the forty-acre tract in controversy had been considered a part of their homestead by them ever since they had established their residence on the adjoining forty. Two of the other brothers said that the land in controversy had always been considered a part of the homestead.

Under these circumstances we think a preponderance of the evidence establishes the fact that the land in controversy had been impressed with the homestead character before McLeod ever attempted to give the land to his son, and the learned chancellor erred in holding otherwise.

It follows under the authorities above cited that the attempted gift by McLeod to his son was of no validity because his wife did not join therein.

There were certain improvements made on the land by the defendant, but according to his own testimony these were not worth more than $150.00 According to the testimony of his brothers they were worth much less. The three acres of land cleared by him amounted to thirty dollars, ten dollars per acre being the price fixed for clearing land by all the witnesses. According to the testimony of one of his brothers the nine rolls of wire purchased by him were not worth more than that. Two of his brothers also testified that the rental value of the ten acres of land which were cleared was worth four dollars per acre. This would amount to one hundred and twenty dollars for three years, and in our judgment the rents would about offset the improvements.

The decree will be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.