RAMEY *v.* PYLES.

Opinion delivered October 6, 1930.

Frank C. Douglas, for appellant.
Holland & Barham, for appellee.

MEHAFFY, J. The appellant began this suit in the Mississippi Chancery Court on a note and mortgage, alleging that on the 18th day of February, 1922, Will Pyles was indebted to him in the sum of $4,232, evidenced by promissory note of that date, payable three years after date with interest at 10 per cent. per annum, and, when said interest is not paid at maturity, to become part of the principal and bear like interest; that, to secure the prompt payment of said indebtedness at maturity, the defendant executed a certain deed of trust conveying to B. A. Lynch, as trustee for plaintiff, the following lands: lots 8 and 9, block 15, Chickasawba Addition to the town of Blytheville, Arkansas. It was alleged that the deed was duly acknowledged and filed for record, and is now of record in Mississippi County. That defendants, Will Pyles and Ada Pyles, have failed to pay, and that there is now due the sum of $4,432 with interest; that the defendant had refused to pay, and the plaintiff had a right to foreclose said property and have the same sold for the satisfaction of the indebtedness.

The defendants, Will Pyles and Ada Pyles, answered admitting that Will Pyles executed the note and deed of trust, but denied that they were indebted to plaintiff in any sum whatever. They alleged that the note and mortgage were procured by fraud of plaintiff; that the property described in the complaint constitutes their homestead; that Ada Pyles did not sign the deed of trust or note, and that it is void for that reason. They asked that the complaint be dismissed.

Ramey testified as to the indebtedness and the execution of the note and mortgage and the following is an agreed statement of facts: "That on the 18th day of February, 1922, Will Pyles was indebted to Charles Ramey in the sum of $4,232; that on said date a note and deed of trust was executed by Will Pyles on lots 8 and 9, block 15, Chickasawba Addition to the town of Blytheville, Arkansas, to Charles Ramey; that lots 8 and 9, block 15, of the Chickasawba Addition to the town of

Blytheville, Arkansas, was on and before the said 18th day of February, 1922, and still is, the homestead of Will Pyles and Ada Pyles; that Ada Pyles is the wife of Will Pyles; that on said date the deed of trust was signed by Will Pyles, was taken to Ada Pyles for her signature, and the said Ada Pyles refused to sign said note and deed of trust.''

There was a judgment against Will Pyles on the note for the amount sued for, and the court held that the deed of trust created no lien on the property and the petition to foreclose was dismissed for want of equity, and that the plaintiff have only personal judgment against Will Pyles.

To reverse that part of decree holding deed of trust void and dismissing the complaint as to the deed of trust, Ramey prosecutes this appeal.

The statute, with reference to conveyance or mortgage of homestead, is as follows: ''No conveyance, mortgage or other instrument affecting the homestead of any married man shall be of any validity except for taxes, laborers' and mechanics' liens and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same.'' C. & M. Digest, § 5542. This note and mortgage were executed by Will Pyles in 1922. In 1923 a curative act was passed by the Legislature which reads as follows: ''That all deeds, conveyances, instruments of writing affecting or purporting to affect the title to real estate situated in this State, which have been recorded and which have been heretofore executed, and which may hereafter be recorded, and which are defective or ineffectual by reason of section 1 of an act entitled, 'An act to render more effectual the constitutional exemption of homesteads,' approved March 18, 1887, be and the same and the record thereof are hereby declared as valid and effectual as though said act had never been passed.''

It is the contention of appellant that this act of 1923 cures the defect in the execution, or rather makes effec-

tual the deed of trust as though the act of 1887 had never been passed. Numbers of decisions of this court are cited and relied on by appellant to sustain this contention. We do not, however, agree with this contention of the appellant. It is agreed in this case not only that the wife did not sign or acknowledge the mortgage, but that she absolutely refused to do so. We said in a recent case: "A curative statute is only intended to cure defects in the execution of a mortgage, and cannot in the very nature of things render valid an act which was absolutely void in the beginning. In short, if a party had never signed a mortgage or deed and it should be held that a curative act which had been passed afterwards could have the effect of making the mortgage or deed effective as far as the person who did not sign it is concerned, this would necessarily have the effect of depriving such person of his property without due process of law. * * * The right which a curative statute or healing act takes away in such case is the right in the party to avoid his contract. Such legislative acts are sustainable only because they are supposed not to operate upon the deed or contract by changing it but upon the mode of proof." *Hall* v. *Mitchell*, 175 Ark. 641, 1 S. W. (2d) 59.

In a more recent case this court quoted with approval from the Hall case the following: "A curative statute is only intended to cure defects in the execution of a mortgage, and cannot in the very nature of things render valid an act which was absolutely void in the beginning. * * * The curative act in question did not purport to cure anything except the defective instruments and does not purport to render valid and effectual an act which had never been done." *Simpson* v. *Teftler*, 176 Ark. 1093, 5 S. W. (2d) 350.

The above cases are the latest cases decided by this court on the question involved here. The authorities were reviewed in the case of *Hall* v. *Mitchell*, *supra*, and it is not necessary to again call attention to them.

It will be observed that the law at the time this mortgage was executed provided that it should not be of any validity. If it was not of any validity, it was a mere nullity. The proper execution of a note and mortgage constitutes a contract, but if it has no validity it is not a contract and one principle of law which is thoroughly settled, is that neither the Legislature nor the courts can make contracts for parties where they have made none. In this case the wife refused to sign the mortgage, then, under the statute existing at that time, the mortgage had no validity, it was void, no contract was made, and since the parties had made no contract, the Legislature and court are without authority to make one for them.

"A contract which the law denounces as void is necessarily no contract whatever, and the acts of the parties, in an effort to create one in no wise brought about a change of their legal status. The parties and the subject-matter of the contract remain in all particulars just as they did before any act was performed in relation thereto. Of course, an action cannot be maintained for damages for the breach of a void contract. A void contract is a mere nullity. It is obligatory on neither party. It requires no disaffirmance to avoid it, and cannot be validated by ratification. A contract wholly void is void as to everybody whose rights would be affected by it if valid." 6 R. C. L. 591.

Curative statutes, as this court has said, are intended to cure defects or irregularities. There would be some reason to hold that a curative act made valid a mortgage of the homestead where parties intended to execute the mortgage properly, where their minds met and the contract was really entered into or agreed to and there was some defect or failure in the proper execution of it, but certainly no one will contend that the Legislature or the court can make a binding contract for the parties where they themselves have made none. No mortgagee can be injured by this because he is bound to

know that a mortgage on a homestead without the wife joining the deed is of no validity, and when he takes his mortgage he either knows or can know whether the property described in the mortgage or deed of trust is the homestead. In the instant case the wife refused to sign the deed of trust and the mortgagee knew it, he therefore knew at the time of the transaction that the deed of trust was without any validity. The decree of the chancery court is correct, and therefore affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.

SMITH, J., (dissenting). The chancellor did refuse to enter a decree foreclosing the deed of trust, but in a written opinion he stated that he had denied this relief upon the authority of the case of *Hall* v. *Mitchell,* 175 Ark. 641, 1 S. W. (2d) 59, which appeared to be in conflict with the previous decisions of this court, but that he had followed the Hall case notwithstanding that fact, as it was the last declaration of the court on the subject.

An examination of our cases will confirm the justice of the chancellor's criticism, and it would appear, therefore, not improper to inquire what rule has been adopted in this State in regard to the validity of curative acts.

The case of *Sanders* v. *Flenniken,* 172 Ark. 454, 289 S. W. 485, announces the rule which had always been consistently followed prior to the opinion in the case of *Hall* v. *Mitchell.* The Mitchell case cited the Sanders case, and there is no intimation of any intention to overrule it or to impair its authority. There was an attempt to distinguish the two cases, but a careful reading of both will disclose the fact that they are not distinguishable.

In the original opinion in the Hall case we said: "In short, if a party had never signed a mortgage or deed, and it should be held that a curative act was passed afterwards could have the effect of making the mortgage or deed effective, *as far as the person who did not sign it is concerned,* this would necessarily have the effect of depriving such person of his property without due process of law."

This is sound law. A curative act could not operate to divest the wife of any interest which she owned in the land and did not attempt to convey, but this is not the purpose of the curative act of 1923. Its purpose is to make valid the husband's conveyance of his own interest.

The opinion on rehearing in the Hall case *shows* clearly that there was no intention to overrule the Sanders case or to impair its authority, for in the opinion on rehearing we said: "Counsel for appellant earnestly insist that in our original opinion we misinterpreted the effect of the decision in *Sanders v. Flenniken,* 172 Ark. 454, 289 S. W. 485, and that our decision in this case is opposed to the principles therein decided. We do not think so."

Further along in the opinion on rehearing it was said: "In the Sanders case the grantors in the deed signed it, and intended to be bound by their act in doing so. Hence it is said the curative act applied in so far as their rights were concerned. There is a wide difference, however, between that case and the present one."

It is just here that we were confused, and I think we should say so candidly and adhere to the Sanders case, as we said we had done, for there is no difference in the two cases in the manner of the execution of the deeds of trust. The opinion in the Sanders case recites that: "It is alleged in the complaint that the wives of the two mortgagors, Riley Sanders and Neil Sanders, did not join in the execution of the deed of trust; that the property was, at the time of the execution of the deed, the homestead of the mortgagors, and that the conveyance was absolutely void by reason of the failure of the wives to join therein," and a demurrer was sustained to the complaint containing these allegations. There was, therefore, a failure of the wives in both the Hall and Sanders cases to sign the mortgages, and yet the curative act of 1923 was held applicable in one case, but not the other. One case or the other must be wrong. Which is right?

The majority say we reaffirmed the doctrine of the Hall case in the later case of *Simpson* v. *Teftler,* 176 Ark. 1093, 5 S. W. (2d) 350, and therefore the Hall case was properly followed by the chancellor. This cannot be true unless we intend to overrule the earlier cases which are in conflict with the Hall case, and there is no suggestion in the majority opinion in the instant case that we have done so or intend these last two cases to have that effect.

Certainly the case of *Simpson* v. *Teftler, supra,* does not have that effect. There was no question of homestead involved in that case. The curative act there held ineffective attempted to validate certain elections relating to local stock laws, and the curative act was held invalid for the reason that the elections there attempted to be validated were void, because of the lack of power to hold them. But there is no question of lack of power here. There was no lack of power on the part of Pyles to execute the mortgage or deed of trust, as will be later shown, if indeed, any discussion of that subject is necessary. That question might just as well be disposed of at this time.

In the case of *Klenk* v. *Noble,* 37 Ark. 298, it was held (to quote a headnote) that "a wife has no interest in the homestead during her husband's life, nor vested right to a future interest, and her concurrence in its alienation is not necessary." And in the case of *Bank of Harrison* v. *Gibson,* 60 Ark. 269, 30 S. W. 39, it was said: "Construing the mortgage, then, as if the act of March 18, 1887, had never been passed, we have only to inquire if it would have been valid as a conveyance of the husband's lands before the passage of that act, and the inquiry can have but one result, and that is that the mortgage is good, that is to say between the parties to it."

But for the act of 1887, which appears as § 5542, C. & M. Digest, there would be no question about the right of the husband to convey his interest in lands which con-

stituted his homestead, although the wife did not join in the conveyance to convey her own interest.

There was, prior to the passage of the act of 1887, no necessity for the wife to join the husband in the conveyance of his interest in lands constituting his homestead to give validity to that instrument, so far as it affected him. Had there been, there was no occasion or necessity for passing the act of 1887. The act imposed a requirement which did not previously exist.

When this case is stripped of its superfluities, the question which remains is just this: What is the effect of the curative act of 1923 on the mortgage of Pyles' interest in his homestead, in the execution of which his wife did not join? In this connection, let it be remembered that the act now under consideration (act No. 80, General Acts 1923, page 43) is the identical act involved in the case of *Sanders* v. *Flenniken, supra,* where it was held to have cured the defective mortgages executed by Riley and Neil Sanders of their homestead, in the execution of which their wives did not join.

Many healing statutes or curative acts have been passed in this and in all the other States, and they have not been limited to defective conveyances of land, but have been upheld in a great variety of other cases. The validity of many conveyances, marriages, tax assessments, judicial proceedings, bond issues, and other matters (See pages 1092 to 1097 of the chapter on Constitutional Law, 12 C. J.) have been established by curative acts, and the principle upon which such legislation may be based is well established by many decisions of this and all other courts.

The right of the General Assembly to pass legislation similar to the act of 1923 was established long before the anactment of that statute.

The concluding note of the annotater of the case of *Thompson* v. *Randle,* 45 A. L. R., pages 388-436, reads as follows: ''The invalidity of a mortgage or conveyance of the homestead exemption executed by the husband

alone may be cured by a subsequent act of the Legislature, no third person having acquired a vested interest in the land prior to such enactment,'' and a number of Arkansas cases are cited in support of that statement of the law, to a few of which specific reference will be later made, and no case was cited holding to the contrary.

The Legislator who wrote the act of 1923 must have had before him act 172 of the Acts of 1893, page 303, and which earlier act was upheld as valid legislation in every case which came to this court to which it was applicable. In several of these cases the wife had not signed the conveyance at all.

The General Assembly, at its 1899 session, saw fit to amend the act of 1893 by an act passed March 13, 1899 (Acts 1899, page 107), which appears as § 785, Kirby's Digest. This act contained the proviso that it should not validate any deed, mortgage or other instrument which the wife had not signed, nor should it validate any instrument then in litigation. The act of 1899, like the former legislation, was upheld, but in no case was it contended or held that the General Assembly might cure defects arising under the act of 1887 when the wife had defectively executed a conveyance but not in those which she had not signed at all. The whole subject was treated as being within the control and discretion of the General Assembly. For subsequent legislation on this subject see § 1565, C. & M. Digest.

The majority say, in effect, that the Legislature may pass a valid curative act to heal a defective execution of a deed or performance of an act required by previous legislation, but cannot do so when there was no attempt to comply with the law, and that, if we should so hold, the effect of that holding would be to make a contract for the parties which they did not themselves make.

I dissent from this view also. It is to be borne in mind that this is an attempt to foreclose a deed of trust, and the litigation is between the parties to that instrument. The rights of no third persons have intervened.

Pyles owed money to Ramey and gave as security for its repayment the deed of trust here sought to be foreclosed. Certainly the parties, and not the law, made that contract, and the question for decision is not whether the law can make a contract for the parties, but is, rather, whether the contract which they made can be enforced, or, in other words, did the curative act of 1923 make enforcible a contract which could not be enforced while the act of 1887 was applicable to it?

In distinguishing between the validity of curative acts relating to conveyances of the homestead, and in upholding those acts where there was a defective attempt to comply with the act of 1887, and in refusing to apply the curative act where no attempt at compliance was made, the majority have departed from the test laid down by Judge Cooley, which has been so often approved by this court as to become a fixed rule of property. In his work on Constitutional Limitations (7th ed.) page 531, Judge Cooley said: "The rule applicable to cases of this description is substantially the following: If the thing wanting, *or which failed to be done,* and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made *immaterial* by prior law, it is equally competent to make the same immaterial by subsequent law."

Certainly the General Assembly might repeal or suspend the act of 1887. It might suspend a requirement which it had imposed. It might undo what it had done. If the Legislature could impose the requirement contained in the act of 1887, might it not later dispense with that requirement?

At pages 538 *et seq.* of the same work Judge Cooley said: "Other cases go much farther than this, and hold

that, although the deed was originally ineffectual for the purpose of conveying the title, the healing statute may accomplish the intent of the parties by giving it effect. At first sight these cases may seem to go beyond the mere confirmation of a contract, and to be at least technically objectionable, as depriving a party of property without an opportunity for trial, inasmuch as they proceed upon the assumption that the title still remained in the grantor, and that the healing act was required for the purpose of divesting him of it, and passing it over to the grantee. Apparently, therefore, there would seem to be some force to the objection that such a statute deprives a party of vested rights. But the objection is more specious than sound. If all that is wanting to a valid contract or conveyance is the observance of some legal formality, the party may have a legal right to avoid it; but this right is coupled with no equity, even though the case be such that no remedy could be afforded the other party in the courts. The right which the healing act takes away in such a case *is the right in the party to avoid his contract,*—a naked legal right which it is usually unjust to insist upon, and which no constitutional provision has ever designed to protect. As the point is put by Chief Justice PARKER of Massachusetts (*Foster* v. *Essex Bank,* 16 Mass. 245), a party cannot have a vested right to do wrong; or, as stated by the Supreme Court of New Jersey, 'Laws curing defects which would otherwise operate to frustrate what must be presumed to be the desire of the party affected, cannot be considered as taking away vested rights. Courts do not regard rights as vested contrary to the justice and equity of the case.' "

But for the case of *Hall* v. *Mitchell, supra,* the law would appear to be well settled. That case did not overrule the Sanders case, which applied the curative act of 1923 to a conveyance of the homestead in which the wives did not join.

In the case of *Sidway* v. *Lawson,* 58 Ark. 117, 23 S. W. 648, Justice BATTLE states the issue involved in that case

as follows: "Appellees contend that it" (the mortgage of the homestead) "was not executed in accordance with the requirements of the act entitled 'An act to render more effectual the constitutional exemption of homestead,' approved March 18, 1887, because the wife did not 'join in the execution' of the same, and is, therefore, void: and appellants insists that if the contention of appellees be correct, it was validated by the act entitled 'An act to cure defective conveyances, acknowledgments,' approved April 13, 1893."

After holding that the curative act of 1893 rendered the conveyance valid, and after quoting and approving the test of the validity of curative statutes announced by Judge COOLEY hereinabove quoted, Judge BATTLE further said: "If defective, it was because the wife did not join in its execution according to the act of March 18, 1887. That act made every instrument affecting the homestead of the husband invalid if the wife failed to join in its execution and acknowledge the same. It vested no additional interest in the wife. The husband could abandon the homestead, and it would become liable to his debts, notwithstanding the act of March 18, 1887. *Pipkin* v. *Williams,* 57 Ark. 242, 21 S. W. 433. The Legislature undertook to create no interest or estate by the act, but to prescribe the manner in which instruments affecting the homestead of a married man should be executed and acknowledged; at the same time recognizing the homestead as the husband's, and not the wife's, nor as the joint property of the husband and wife," he concluded the discussion of the validity of the mortgage rendered so by the act of 1893 by saying: "It is now a valid mortgage."

The case of *Beavers* v. *Myar,* 68 Ark. 333, 58 S. W. 40, was one in which the wife did not join in a conveyance of the homestead, executed prior to the curative act of 1893, and it was insisted that the amended curative act of 1899, repealing the act of 1893, had the effect of again rendering the conveyance invalid, but the court held (to

quote the syllabus): "Rights vested under act of April 13, 1893, curing execution or acknowledgment of conveyances of homesteads by married men which were defective under act of March 18, 1887, were not divested by act of April 19, 1899, repealing the act of 1893."

The case of *Hanson* v. *Brown*, 139 Ark. 60, 213 S. W. 12, was one in which the opinion recites that Hanson executed a deed of trust and that: "His wife did not join with him in the execution of this deed of trust," yet it was held that: "The Legislature of 1893 passed an act to cure defective conveyances and acknowledgments which were defective or ineffectual by reason of not having complied with the act of March 18, 1887, above referred to. See Acts of 1893, p. 303. This act has the effect to validate the deed of trust from A. J. Hanson to J. T. Waller to secure an indebtedness to J. M. Waller." This statement of the law was regarded as so well established that no cases were cited to support it.

The case of *Alkire Grocery Co.* v. *Jackson*, 66 Ark. 455, 51 S. W. 459, was also one in which the wife did not join in the execution of a conveyance of the homestead, yet it was held that the curative act there applied cured this omission. But the cases are too numerous to review them all.

These and other cases are to the effect that the applicable curative act applies alike to conveyances which were executed by the wife defectively and to those which she did not attempt to execute at all, the point in all of them being that it is within the power and discretion of the General Assembly to suspend the operation of the act of 1887 entirely, or to do so only in certain cases, as was done by the act of 1899. The curative acts were all held valid because they were an exercise of the power of the General Assembly to suspend a statute requiring a particular execution of the conveyances which would not otherwise have been necessary to make those conveyances valid.

If the Sanders and similar cases, none of which have been expressly overruled, are to be followed, rather than

the Hall case, which did not overrule them, a decree should have been entered ordering the foreclosure of Pyles' interest in the homestead. This would not make a contract for him; it would merely enforce a contract which he himself made.

For these reasons I dissent from the opinion and judgment of the court; and I am authorized to say that Justices McHaney and Butler concur in the views here expressed.