A. A. B. Woerheide, Assignee, etc., Appellant, v. John Johnston et al., Respondents.

| 81 | 193 |
|-----|-------|
| 100 | 4224 |
| 81 | 193 |
| 101 | 4589 |
| 101 | 4590 |

St. Louis Court of Appeals, October 19, 1899.

1. **Building and Loan Association:** ASSIGNMENT: CORPORATION. A building and loan association, while peculiar in its features, is nevertheless a business corporation, and when its affairs become so tangled that it can no longer subserve the purposes of its incorporation, they may be wound up by a court of equity, and its assets marshaled and distributed, but no good reason appears to us why it may not also make an assignment of its assets and under the direction of the court have them distributed by an assignee.

2. ———: ———: ———: SHAREHOLDERS: CREDITORS. Where a building and loan association borrows the money of an outsider, and that money goes into its treasury and is used in its business, neither the association nor its shareholders should be permitted to say that the lender of such money is not a creditor.

3. ———: ———: ———: ———: INSOLVENCY OF BUILDING AND LOAN ASSOCIATION. In case of the insolvency of a building and loan association, it can lawfully assign all of its notes and other assets to its assignee, selected by its board of directors, to collect and distribute its assets to its creditors and stockholders.

VOL. 81 app—13

4. ———: ———: ———: ADVANCED MEMBERS. Upon the pre-
mature insolvency of a building and loan Association those members
or shareholders who have borrowed the funds of the association,
sometimes called "advanced members," may be compelled forthwith
to pay the balances due from them on their notes or mortgages, not-
withstanding said notes or mortgages stipulate for payment in instal-
ments as in the case at bar.

Appeal from St. Louis County Circuit Court.—*Hon.
Rudolph Hirzel*, Judge.

REVERSED AND REMANDED (*with directions*).

*Fisse* and *Kortjohn* for appellant.

(1)   A board of directors of an insolvent corporation
has not only the right to make an assignment for the benefit
of its creditors, but it is their duty to do so, and such assign-
ment can be made by the board of directors not only without
the consent of its stockholders, but it may be made against
their expressed wish.   Chew et al. v. Ellingwood, 86 Mo.
273; Descombes v. Wood, 91 Mo. 196; Hutchinson v.
Green, 91 Mo. 375; Foster v. Mullanphy Planing Mill Co.,
92 Mo. 80.   (2)   The mortgage in question was assignable.
Detweiler v. Breckenkamp, 83 Mo. 45; Callahan's Appeal,
124 Pa. St. 138.   Upon the premature dissolution of a
building association the members who have received advances
may be compelled to pay forthwith the balance due from
them on their securities, although the latter be given in terms
only for the payment of instalments.   End. on Bldg. Ass'ns,
[2 Ed.], sec. 523, p. 518; Kent v. Wright, 2 Ch. 462;
Brownlie v. Russell, 8 App. Cas. 235; Towle v. Am. Bldg.
Loan, 61 Fed. Rep. 446, 447; Strohen v. Franklin Sav. Fund
and Loan Ass'n, 115 Pa. St. 273.   (3)   In the accounting
between an insolvent building association and its borrowing
stockholders, the latter will not be entitled to receive any
credit for dues paid by him, but will be entitled to receive

credit for premiums paid, together with interest thereon at the same rate that the bond bears. Strohen v. Ass'n, 115 Pa. St. 273; Rogers v. Hargo, 92 Tenn. 35; Post v. Mechanic's Bldg. Ass'n, 97 Tenn. 408; Brown v. Arch, 62 Mo. App. 277.

*R. L. & John Johnston* for respondent.

(1) The petition alleges the insolvency of the building association, not because of inability to pay its own shareholders, but inability to pay outside debts. A building association, incorporated under our statute of 1887 (art. 9, chap. 42 of Revision of 1889) save for the trifling and necessary expense of conducting the business, can not legally contract outside debts. It had no power to accumulate a fund by borrowing money, nor to borrow money for any purpose, until the amended law of April 20, 1895, sec. 17, conferred a very limited and carefully guarded power. "The insolvency of a building association is a thing peculiar to itself and consists in its inability, not to pay outside debts (for such a case can hardly ever occur, and in the nature of things is not to be thought of), but to satisfy the demands of its own members." 2 Am. and Eng. Ency. of Law, p. 643, sec. 13; Endlich on Bldg. Ass'ns, sec. 488. (2) An assignee, under our voluntary assignment statute (of his own motion) has no power to institute and prosecute a suit in equity with reference to the assigned estate. His powers and duties as assignee are prescribed and limited by that law, and he can not go beyond that limit. If not precluded by said section 2513, a court of equity might, under its general powers, wind up the affairs of the dissolved building association by the intervention of a receiver, but not through an assignee under the general assignment law. But in that case the application must be made by a *bona fide* creditor, or a member of the corporation. 2 Am. and Eng. Ency. of Law, p. 643, sec. 13; Endlich on

Bldg. Ass'ns, sec. 488; In re Assigned Estate of Nat. Sav. L. and B. Ass'n, 9 W. N. C. (Pa.) 79.

BIGGS, J.—The Western Union Building and Loan Association No. 2, was organized on the twenty-sixth day of June, 1890, under the laws of the State of Missouri. It continued to do business until January 8, 1894, when it became insolvent and made an assignment of its assets to the plaintiff for the benefit of its creditors. At the time of the assignment it owed third parties for borrowed money over $32,000, which debts were duly allowed by the assignee. It also appears by the averments in plaintiff's bill and by the undisputed evidence, that the entire available assets of the association will be insufficient to pay said indebtedness. The defendant John Johnston subscribed for eight shares of the capital stock of the company upon which he borrowed from the company $1,920, for which he gave the usual note for such loans. The note recited that it was to be satisfied upon the payment of certain monthly dues on the shares of stock and monthly interest on the debt and also certain monthly premiums, which Johnston had agreed to pay for the privilege of procuring the loan. To secure this note Johnston executed a deed of trust on certain land, which deed set forth the conditions of the contract between the parties, and provided that if Johnston at any time prior to the full payment of the debt (that is until the maturity of the shares of stock), should make default in the payment of the dues, interest or premiums, then the land should be sold to satisfy the debt. Johnston met his payments promptly until the insolvency of the company. Subsequently the plaintiff as assignee demanded of him the immediate payment of the note, less the interest and premiums theretofore paid, which request was not complied with, and thereupon this action in equity for an accounting and for a foreclosure of the mortgage was instituted. The foregoing facts were shown by the plaintiff at the trial and were not disputed by the defendants. At the conclusion of

plaintiff's evidence the circuit court directed a judgment to be entered dismissing the bill. The plaintiff appealed the case to the supreme court. That court decided that it was without jurisdiction of the appeal and ordered the cause transferred to this court for final adjudication.

Before the question of jurisdiction was called to the attention of the supreme court the cause was submitted in Division No. 2, and an opinion was written by his Honor, Chief Justice Gantt reversing the judgment and remanding the case. We have been favored with a copy of that opinion. We have examined it, and as it fully meets our views of the legal questions presented we adopt it as the opinion of this court. It is as follows:

"The questions presented in this record are very important and have received different answers in different jurisdictions.

"At the threshold the right of the plaintiff as assignee is challenged.

"It is certainly insisted by counsel for defendant that a building and loan association under our laws can not become insolvent by reason of outside debts because it has no authority to contract such debts; that its only legal indebtedness is to its own shareholders and when from any cause it becomes insolvent or unable to perform its agreements with them, the association must be wound up in a court of equity by the trustees or a receiver and not by an assignee under our act governing voluntary assignments for the benefit of creditors.

"On the contrary, plaintiff insists that the directors of the association had the same power to make an assignment that is accorded to the directors of other corporations and that the association is estopped from pleading *ultra vires* as to the indebtedness contracted by it.

"There is great force in the contention of defendant that 'the insolvency of a building association is a thing peculiar to itself and consists in its inability not to pay outside debts

(for such a case can hardly ever occur and in the nature of things is not to be thought of) but to satisfy demands of its own members.'

"This was the view of Presiding Judge Ludlow of the common pleas court in the matter of the assigned estate of the National Savings Loan & Building Association, 9 Weekly Notes of Cases 79 (Pa.).

"In Towle v. American Building, Loan & Inv. Society, 61 Fed. Rep. 446, Grosscup, Judge, said, 'the insolvency of such an institution is *sui generis*. There can be strictly speaking no insolvency for the only creditors are the stockholders by virtue of their stock.' On the other hand the solution of this troublesome question came before the supreme court of Pennsylvania in Christian's Appeal in 102 Penn. 184, and that court while holding that a court of equity through its receiver was a proper tribunal to administer and adjust the affairs of an insolvent building association adjudged that an assignment for the benefit of creditors was a more direct course to pursue and that the equitable result could be as well attained in such an assignment as by a suit in equity, and further held that in such a proceeding the claims of general creditors should first be paid in full, and the remainder distributed *pro rata* among those whose claims were based upon stock of the association.

"A building and loan association while peculiar in its features is nevertheless a business corporation and when its affairs become so tangled that it can no longer subserve the purposes of its incorporation its affairs may be wound up by a court of equity and its assets marshaled and distributed but no good reason appears to us why it may not also make an assignment of its assets and under the direction of the court have its assets distributed by an assignee.

"As to the other contention that such an association has no power to create a debt other than to its shareholders, we are of opinion that where such an association borrows the

money of an outsider and that money goes into its treasury and is used in its business neither the association or its shareholders should be permitted to say that the lender of such money is not a creditor. Criswell's Appeal, 100 Pa. St. 448.

"This question has received thorough consideration of the courts in several states of this union as well as of England and from these adjudications we deduce the following conclusions: *Prima facie* there is nothing in the character of these associations which takes them out of the general rule which permits corporations generally to borrow money to carry out the purposes of their incorporation though such power is not expressly conferred by the law creating them. 4 Am. and Eng. Ency. of Law [2 Ed.], p. 1022 and 1023; Endlich on Bldg. Ass'ns [2 Ed.], secs. 297-299; Thomp. on Bldg. Ass'ns, sec. 277, and cases cited; Davis v. West Saratoga Bldg. Union, 32 Md. 285; Jackson v. Meyers, 43 Md. 452; Bldg. Ass'n v. Bank, 79 Wis. 31; Jones v. Bldg. Ass'n, 94 Pa. St. 215; Hohenshell v. Sav. & Loan Ass'n, 140 Mo. 566; Bailey v. Ins. Co., 73 Mo. 381 *et seq*.

"At first this power to borrow was denied in England but such power could be conferred by a rule to that effect in the charter, so held by the House of Lords. Murray v. Scott, L. R. 9 App. Cas. 538.

"In many states of the Union this power is expressly conferred by statute. In Missouri the statutes did not grant this power expressly prior to the Act of April 20, 1895 (Laws of Mo., p. 114, sec. 17) which confers the power to borrow but limits it to temporary purposes not inconsistent with the objects of the organization and provides it shall have no longer duration than two years, and not to exceed at any one time the aggregate amount of the income from dues and interest for six months.

"That act of course does not affect this case.

"Our conclusion is that the power to borrow money for the purposes of its business was implied in building associa-

tions at the time this institution received its right to do business, that as a corollary to that power it might execute its note or obligation to the lender and assign the notes or bonds it held to secure lenders to it, and in case of its insolvency it could lawfully assign all of its notes and other assets to its assignee selected by its board of directors to collect and distribute its assets to its creditors and stockholders.   Detweiler v. Breckenkamp, 83 Mo. 45; Callahan's Appeal, 124 Pa. St. 136.

"It follows that the assignee in this case acquired by the assignment to him the legal title to defendant's note and mortgage and the right to foreclose and collect the same.

"The contention of counsel that because of the mutual and reciprocal stipulations entered into by the association and himself by which he would have been permitted to repay the $1,920 borrowed by him of the association by monthly payments of $22.72 per month until the shares all matured must yield to the superior rights of the creditors of said association whose claims are preferred.   Upon this proposition there seems to be but one opinion.   All the courts before whom this question has come hold that upon the premature insolvency or dissolution of the association those members or shareholders who have borrowed the funds of the association, sometimes called "advanced members," may be compelled forthwith to pay the balances due from them on their notes or mortgages, notwithstanding said notes or mortgages stipulate for payment in instalments as in the case at bar.   Towle v. Am. Bldg. Loan and Inv. Soc., 61 Fed. Rep. 446; Strother v. Franklin Sav. & Loan Ass'n, 115 Pa. St. 273; Brownlie v. Russell, 8 (H. L.) App. cases, 235; Endlich on Bldg. Ass'ns [2 Ed.], sec. 523.

"The court should not credit defendant with dues paid by him but allow him credit for premiums paid together with interest at the same rate his mortgage bears.   Rogers v.

Hargo, 92 Tenn. 35; Post v. Ass'n, 97 Tenn. 408; Brown v. Arch, 62 Mo. App. 277."

The judgment of the circuit court will be reversed and the cause remanded with directions to enter judgment for plaintiff in accordance with the foregoing opinion. All concur.