PEOPLES' BUILDING, LOAN & SAVINGS ASSOCIATION *v.* MORRIS.

PEOPLES' BUILDING, LOAN & SAVINGS ASSOCIATION *v.* QUARLES.

Opinion delivered March 24, 1900.

BUILDING & LOAN ASSOCIATION—MATURITY OF STOCK.—A certificate of shares in a building and loan association recited that the shareholder held 10 shares therein of $100 each, and, in consideration of her compliance with the conditions therein and in its articles of association and by-laws, the association agreed to pay her $100 for each of said shares "at the end of five years from the date hereof or at maturity."   The articles of association provided that whenever the dues paid and dividends declared should equal the par value of the shares, the shareholder should be entitled to receive the par value of the shares; that 66 monthly installments of dues were all that should be required of a member; and that, if at the termination of the period of 66 months the stock should not have matured, the holder might withdraw the amount standing to the credit of the certificate, or allow the certificate to remain till it should be matured by subsequent dividends.   The prospectus of the association recited that it was the only one that wrote a definite contract, specifying the exact number of payments required from members.   There was evidence that the association's agent made representations to the shareholder, when he made his application, that his stock would mature in five years.   In an action by the shareholder

to cancel the mortgage given to secure a loan of $1,000 from the association after she had paid 66 monthly installments of dues, but before the dues paid and dividends declared equaled the par value of the shares, *held* that plaintiff was not entitled to the relief sought. (Page 27.)

Appeal from Benton Circuit Court in Chancery.

EDWARD S. McDANIEL, Judge.

Also appeal from Washington Circuit Court in Chancery.

EDWARD S. McDANIEL, Judge.

### STATEMENT BY THE COURT.

The first case is an appeal by the appellant from a judgment entered in Benton county at the spring term of the Benton circuit court, chancery side thereof, 1897. The suit was brought by Carrie M. Morris to cancel a certain deed of trust which the appellee, together with her husband, had executed on certain lands to secure the fulfillment of a bond in the sum of $2,000 made to the said association at this time to secure the payment of $1,000 borrowed from said association by said appellee; the same being an advancement upon ten shares of the stock of the said association,—maturity value, $100 per share. Appellee alleged that the said stock had matured according to its terms, and prayed cancellation of the mortgage, and for all relief. Appellant association answered, denying the allegations of appellee's complaint, and, by way of cross complaint, alleged that the conditions of the bond had been broken, and asked a decree of foreclosure. To the cross complaint the appellee answered, denying its allegations. The court found that the appellee had the right to discharge the said obligation with sixty-six monthly payments of $18.34 each, and twenty-two quarterly payments of $2.50 each, but that the said appellee had only made sixty of such payments, and gave judgment to the appellant upon its cross complaint in the sum of $119.83, and decreed the same a lien upon the property mentioned in the mortgage. From this judgment appellant excepted, and prayed an appeal which was granted. The facts, as disclosed by the evidence, are that on April 1, 1891, there was issued to R. H. Morris a certificate of stock in the Peo-

ples' Building, Loan & Savings Association of Geneva, N. Y., and that upon the 11th of May of the same year the assignment of the said stock to Carrie M. Morris, wife of the said Richard H., was approved in writing by the secretary of the said association, and that upon the same she borrowed $1,000, executing a bond and trust deed,—she having begun payment upon the stock some time prior to receiving the loan,—and that she paid 60 months, but that the stock at that time was not matured. The proof shows that the actual value of this stock at the time this cause was submitted was $523.72, though the learned chancellor held that the appellee was entitled to have her mortgage discharged upon the payment of 66 monthly installments. The various questions raised are treated as they arise in the discussion of the subject hereafter. In the case from Washington county of Quarles and Quarles, appellees, the facts are that they secured a loan from the association of $1,000, and took a similar certificate of stock, and paid upon their loan for 60 months; and the court held that these payments discharged the obligation.

*Nathan B. Williams* and *W. L. Stuckey*, for appellant.

The contract in this case is made up of the articles of association, the by-laws and the printed conditions on the back of the certificate, besides the application for and certificate of membership. 52 N. Y. 131; 39 Super. Ct. Rep. 73; 66 N. Y. 533; 94 N. Y. 104; 83 Hun, 92; 92 Hun, 572. The articles of association form the measure of its powers. Thompson, Bldg. Ass. 516; Cook, Stock, etc. § 492; 4 Wheat. 518; Endlich, Bldg. Ass. §§ 65, 232; 20 Ark. 443; 38 Oh. St. 349; 19 Pa. St. 144; Thompson, Bldg. Ass. 18; 11 Oh. St. 96; 73 Ala. 325; 89 N. Y. 467. Appellee's certificate simply conferred upon her the rights of a stockholder, subject to the laws of the corporation. 128 N. Y. 537, 545. Appellee was not entitled to receive payment for her shares in full until the payments made by her upon the same, together with the dividends declared and credited ratably to the stock, shall have brought same to its face value. 140 N. Y. 549; 2 Am. & Eng. Enc. Law, 608. Appellee's contract was made with reference to existing laws of the association, and his stock must be brought to

maturity thereunder before it is due in full.   21 Ark. 85; 25
Ark. 261; 28 Ark. 387, 394.   The mere estimate that the stock
would mature in five years is not a binding agreement to that
effect.   92 Hun, 572; Beach, Cont. 708; 34 Ark. 323; Cook,
Stock, etc. § 12, p. 20.   The contract was a New York
contract, and is governed by the laws of that state.   92 Hun,
572; 30 S. W. 39; 33 S. W. 211.   The court should have fol-
lowed the rule laid down in *Roberts* v. *American Bldg. &
Loan Association*, 62 Ark. 572.

   *J. A. Rice, C. M. Rice, W. S. Pollard*, and *Watkins &
Walker*, for appellees:

   There is nothing in the law of New York prohibiting the
corporation from making a contract that stock will mature in
a definite time, and the corporation would not be in a position
to plead *ultra vires* if there was.   78 N. Y. 159; 24 Law. Ed.
Sup. Ct. U. S. Rep. 291; 16 *ib.* ·176; 16 *ib.* 498; 22 N. Y.
258; 83 Ill. 137; 55 Ill. 413; 27 Am. & Eng. Enc. Law, *ultra
vires*.   The contract is void for usury.   Const. Ark. art. 19,
§ 13; Sand. & H. Dig., §13.   The contract is governed by
Arkansas laws.   33 Ark. 647, 648; Bish. Cont. §§ 1391–5; 27
Law. Ed. Sup. Ct. U. S. Rep. 106.   A married woman's exe-
cutory contract is not valid.   2 Am. & Eng. Enc. Law, 616;
39 Ark. 357; 84 Pa. St. 211.   There having been no compet-
itive bidding for the loan; but, same being made simply at a
premium priced by the association, it was not a building and
loan transaction, but a loan.   This being so, it is void for
usury, whatever law be applied.   Endl. B. &. L. Ass. (1 Ed.)
§ 394; *ib.* (2 Ed.) 511; 20 C. L. J. 384, S. C. 42 Oh. St.
655; 35 L. R. A. 244n.; 102 Pa. St. 41; 2 N. Dak. 82; 50 N.
E. 998.   A foreign corporation can make and enforce its con-
tracts here only through comity; and no contract in violation
of Arkansas laws will be so enforced here.   2 Beach, Corp.
411; Webb, Usury, § 267; 115 N. C. 825; 50 N. E. 998; 34
S. W. 236; 41 *ib.* 874; 47 Am. St. Rep. 847; 32 S. W. 262;
97 Ala. 417.

   HUGHES, J., (after stating the facts.)   The question to
be determined in these cases is, did 60 or 66 payments by the
shareholders respectively discharge their obligations under the

contracts they had entered into with the association, and entitle them to discharge, as held by the circuit court? This association was organized under and in accordance with chapter 122 of the laws of New York for 1851. Its purposes were similar to those of building and loan associations generally. Upon application of the party desiring to become a member, he or she was made such by the action of the board of directors of the association, if the application was accepted, and thence became interested in the business and affairs of the association,—a participant ratably in the profits and losses, and governed by its articles of association and by-laws. Upon the acceptance of the application for membership in these cases, the following certificate of shares was issued to the applicant, to-wit: "Certificate of Shares. The People's Building, Loan & Savings Association, Geneva, New York. Number, 4,988. Shares 10. This is to certify that Mrs. Allie L. Quarles, of Fayetteville, State of Arkansas, is hereby constituted a shareholder in the People's Building, Loan & Savings Association, incorporated under the laws of the State of New York, and holds ten shares therein, of one hundred dollars each; and in consideration of the entrance fee, together with agreements and full compliance with the terms and conditions printed on the back of this certificate, and the articles of association and by-laws adopted by the said association, all of which are hereby referred to and made a part of this contract, the said People's Building, Loan & Savings Association agrees to pay said shareholder, or her heirs, executors, administrators, or assigns, the sum of $100 for each of said shares at the end of five years from the date hereof or at maturity, or, in case of the death of the holder of this certificate before the expiration of said term, then a sum of money equal to the amount of monthly installments paid on said shares, together with all dividends accrued thereon; or the holder of the within certificate may surrender the same to the association at any time after two years from the date hereof, and receive therefor a certificate of paid-up shares for as many shares as the amount credited to such certificate will purchase at the rate of $60 per share, all of which are payable in the

manner and upon the conditions set forth in the articles of association and by-laws of the association, and terms and conditions printed on the back of this certificate. Given under the seal of said association at Geneva, N. Y., this 1st day of April, 1891. [Signed] N. B. Covert, President. [Signed] D. F. Atwood, Secretary. (L. S.)" The certificate of shares provides that the payments which are therein provided for are "payable in the manner and upon the conditions set forth in the articles of association and by-laws of the association, and terms and conditions printed on the back of this contract." Among the terms and conditions printed on the back of the certificate are the following: "First. The shareholder or person who is to pay all installments under this certificate, agrees to pay or cause to be paid to the association a monthly installment of one dollar for each share mentioned in the certificate on or before the last Saturday of the third, sixth, ninth and twelfth month of each year." The second provides for payment of a quarterly installment of 25 cents for each share on or before the third, sixth, ninth and twelfth months of each current year. The third provides for a fine of 10 cents for failure or neglect to pay for first month, 10 cents for second, and 20 cents for each month's neglect thereafter while the policy continues. "Sixth. No agent is authorized to change or alter this certificate, or to waive forfeiture, or to extend credit, or to grant permits, or to alter notices, proofs, or any other matters; and the association assumes no other obligation than contained in its printed literature." "Eighth. The articles of association, by-laws, terms, and conditions, together with the application, are to be construed together as the contract between the shareholder and the association." Article 17, § 1, of the original articles of association, adopted December 22, 1877, which were in force when the certificate in this case was issued by the association, provides: "Whenever the dues paid and dividends declared shall equal the par value of the shares held by any shareholder, said shares of stock shall be canceled, and notice of such cancellation shall at once be given to the shareholder, who shall be entitled to receive upon the return of his or her certificate of stock the par value of the shares named.

in his or her certificate of stock, and no more; and said association shall not be liable to said stockholder for any dividends or interest on said stock so matured, after the stock has matured, and notice of cancellation thereof has been given to said stockholder."

The appellee contends that the language of this certificate, that the association will pay $100 to the shareholder, his heirs or assigns, "at the end of five years, from the date hereof [thereof] or at maturity," bound the association to pay absolutely at the expiration of five years, provided the shareholder had paid the dues, etc., as required, whether the payments, with the dividends, matured the shares or not. The appellee, in her complaint, sets out that representations to this effect were made to her by the agent of the association, and exhibits with her complaint the prospectus of the company, containing this language: "This association is the only one that writes a definite contract, specifying the exact number of payments that will be required from members on each share of stock, and takes a mortgage for a definite period. Bear this in mind, and read carefully the certificate we issue." This has some appearance of a trick to catch the unwary, and seems to have succeeded. There was some evidence that the agent made representations to the shareholder, when he made his application, that his stock would mature in five years, and that he would not have to make payments for a longer time than five years, and that it might mature sooner. But from the reading of the articles of association, the by-laws, and the certificate of shares, which together constitute the contract, it seems that this language of the prospectus and of the agent must be considered merely estimation, it may be of an extravagant character, upon the part of the company, that might have led the applicant to a wrong conclusion in the premises; i.. e. that his contract was one for a definite number of payments. The contract is a written contract, and the writing in which it is contained, properly construed, will govern the contract, to the exclusion of any outside oral matters or colloquiums between the parties, because the parties made, or are presumed to have made, the writing the repository of their final agreement. Article 17, § 2, of the

articles of the association, as amended and adopted on December 2, 1893, provides that: "Sec. 2. In class A, sixty-six monthly installments are all that shall be required of members in said class; in class B, ninety-six monthly installments are all that shall be required of members in said class; in class C, one hundred and fifty-six monthly installments are all that shall be required of members in said class. And when the amount of these installments paid into the loan fund, together with the accumulation thereon, shall amount to the par value of such share, they shall be deemed matured. If at the termination of these respective periods the respective classes of stock shall not have matured, the holders of such shares shall have the option of withdrawing the amount standing to the credit of such certificates on the books of the association at the home office, or allowing such certificates of shares to remain until the same shall be matured by reason of subsequent dividends." Under this section the appellee, after making 66 monthly payments, had the option of withdrawing the amount standing to the credit of her certificate of shares on the books of the association, or of allowing her certificate of shares to remain until matured by reason of subsequent dividends, or, if she desired not to suspend payments after 66 payments had been made, she might continue the annual payments until her stock matured, or reached the par value of $100 per share. The certificate of shares does not provide for the maturity of the stock at the end of five years, nor does any provision of the articles of the association or its by laws; and, according to these, the stock must be brought to maturity, or the par value of $100 per share, before the shareholder is entitled to payment, or to have her security canceled or satisfied.

The appellee alleges in her complaint that she was induced by the false and fraudulent representations of the agent of the association, and the language of the prospectus issued by the association and delivered to her, to take stock in said association, and said representations by said agent that he was authorized to say that a definite number of payments were all that would be required to mature the stock, and that it would mature in five years, and might in

less time, but not longer, and that she believed said statements and relied upon them.    But in the complaint there is no offer to rescind, and no relief is asked on the ground of fraud.    But the complaint alleges that she had complied with the contract, and had paid all she was required by it to pay,. and asks on that account to be discharged, and that the security she had given be canceled.    It is evident that the appellee had not brought her shares of stock to maturity, or to the par value of $100 each, according to the contract, construed in the light of the certificate of shares, the terms and conditions on the back thereof, the articles of association, and the by-laws of the association.    The decree of the circuit court is reversed, and the cause is remanded, with directions to the chancellor to ascertain what is due by the appellee on her certificate of shares, giving her credit for all payments, and charging her with her proportionate part of the losses of the association, and to render a decree for the balance due on the shares of stock, and to ascertain the present value of her stock according to the rule laid down in *Roberts* v. *Am. Bldg. & Loan Association*, 62 Ark. 572.

WOOD and RIDDICK, JJ., dissent.