## HOUGH *v.* WOODY.

Opinion delivered December 13, 1902.

BUILDING AND LOAN ASSOCIATION—MATURITY OF STOCK.—Where the by-laws of a building and loan association provided that when sixty monthly payments had been made on a certain class of stock, the holder should be entitled to receive the value thereof, and that if the borrowing holder thereof made sixty payments of dues, interest and premiums, he should be entitled to a credit on his loan of the value of the stock, and, on payment of the balance, if any is due, the loan should be cancelled, and the borrower released from further liability, the owner of such stock became entitled only to the actual value of his stock, and not to its par value, at the expiration of the sixty months, notwithstanding a prospectus of the association stated that the stock has a positive maturity at the end of sixty months, as such statement was necessarily an estimate.

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Chancellor.

Reversed.

*Greaves & Martin,* for appellants.

This was a Missouri contract.   67 Ark. 252; 68 Ark. 24.

*Warrick M. Hough, pro se.*

A building and loan association cannot guaranty the value of stock, and losses must fall on stockholders equally.   150 Mo. 103. Demand made by appellee did not change his status from a stockholder to a creditor.   140 Mo. 566.   Appellee must settle his loan, independently of his stock interest.   62 Mo. App. 277; 81 Mo. App. 193; 80 Mo. App. 542.   The Arkansas and Missouri authorities are in accord on the propositions.   67 Ark. 25; 68 Ark. 24; 68 Ark. 382.

*Wood & Henderson,* for appellees.

The courts of one state cannot take judicial notice of the laws of another state.   14 Ark. 603; 16 Ark. 83; 30 Ark. 124.   The presumption is that the by-laws were duly authorized.   5 Thomp. Cor. § 5967; 4 *Ib.* § 5644; 7 Am. & Eng. Enc. Law (2d ed.) 703, 817; 96 U. S. 258; 54 N. W. 832; 7 Pac. 898.

BATTLE, J.   The Farmers & Mechanics' Saving Company was a corporation and building and loan association organized under the laws of the State of Missouri, with a capital stock of one million of dollars, divided into ten thousand shares, of one hundred dollars each.   J. F. Woody was a member of it, and owned nine and a half shares of its capital stock in class "A" and series 18.   He did not pay for them, but obligated himself to do so in monthly payments of $9.50, to be continued until his stock matured, or he withdrew from the corporation pursuant to its by-laws.   He borrowed of it three hundred dollars, bidding therefor one and a half shares of his stock, as a premium, and pledged his shares and mortgaged real estate to secure the payment thereof, and executed a note therefor in the words and figures following:

$300.                      "Springfield, Mo., July 15th, 1892.

Sixty months after date I promise to pay to the Farmers & Mechanics' Saving Company, of Springfield, Missouri, three hundred and no-100 dollars for value received with interest from date at the rate of six per cent. per annum, payable in monthly installments on the fourth Saturday of each month; and I promise to pay said company sixty monthly dues of nine and $^{50}/_{100}$ dollars each as

stockholder in said company upon 9½ shares of stock (which I agree to carry until this loan is fully paid), with all penalties on said stock according to the by-laws and' prospectus of said company. I further agree to pay said company the sums of one and $^{50}/_{100}$ dollars each month for sixty months, being the premium paid by me for this loan.                                        J. Frank Woody."

After this he sold and transferred his shares to I. W. Woody, she agreeing to perform his contract with the company. She and J. F. Woody paid sixty monthly dues of nine dollars and fifty cents each upon the nine and a half shares, the sixty months expiring on the first day of July, 1897. Claiming that $950 were due on the nine and a half shares at the expiration of the sixty months, she repeatedly demanded of the company the payment thereof, less the $300 and $150 for a premium for the loan, and, failing to collect it, she brought this action to recover the same, and the defendant, the Farmers & Mechanics' Savings Company, answered. She recovered judgment for $557.50, and the defendant appealed.

Counsel for appellee correctly states the contention of parties and the question to be decided as follows:

"Appellee's contention is that, under the contract with the Farmers & Mechanics' Savings Association by which said stock was issued, the stock matured upon the payment thereon of sixty full monthly payments of dues, and after the expiration of sixty months; that appellee, I. W. Woody, having made all of such payments, as well as all payments of premiums and interest on said loans, and said sixty months having elapsed, was entitled to receive from said Farmers & Mechanics' Savings Company the matured or face value of said stock, less the amount of said loan and the stock bid as a premium for said loan.

"On the other hand, the contention of appellants is that the stock did not mature upon the payment of sixty monthly payments of dues; that it could not mature until the amount of dues paid, together with profits, were sufficient to make said stock of par value, and that such condition had not arrived. It is not denied that appellee, I. W. Woody, made the sixty full monthly payments of dues on said stock, and that sixty months elapsed after the first of such payments before demanding the amount due her as the value of said stock, after deducting the amount of the loan and premium stock. Nor is it denied that she gave proper and sufficient notice of such demand before instituting the suit.

"The main question to be determined is, when did the stock mature? This question must be settled from the contract between the parties, construed in the light of the law under which the company was chartered and the by-laws of said company as disclosed in the evidence in the case."

The by-laws of the appellant were adduced as evidence at the hearing of the cause. Section 3 of article 2 of the same, by authority of which the shares were issued to J. F. Woody, is in part as follows: "Sec. 3. The stock of this company shall be divided into four classes, and payments thereon shall be made as follows:

"Class A. The payments shall be one dollar per share payable monthly, on or before the fourth Saturday of each month for sixty (60) months, or to the date of maturity. And when the sixty (60) monthly payments have been made according to the terms hereof, and sixty (60) months have elapsed from and after date on which the first of said monthly payments was made, the legal holder of each and every certificate issued in class 'A' shall be entitled to receive the value of each and every share of said stock, and it shall be paid the owner, his heirs or assigns, on thirty days' written notice."

Section 7 of article 6 of the same by-laws is as follows: "Each and every stockholder shall be entitled to a loan secured by real estate, not to exceed one hundred ($100) dollars for each and every share which he or she may possess, provided said borrower is a shareholder to the extent of at least three (3) shares of stock, and has paid his monthly dues at least one month."

And section 15 of the same article reads as follows: "The borrowing member may repay his loan at any time upon thirty days' written notice, in which case he must pay the full amount of his loan with interest to the date of payment. He will then be entitled to receive the withdrawal value of the stock which he has pledged for the loan. If the borrowing member in 'A' stock makes sixty (60) payments of dues, interest and premium, and the borrowing member in class 'B' makes one hundred (100) payments, he shall then be entitled to a credit on his loan of the value of the stock pledged, and on payment of the balance, if any is due, the loan will be cancelled, and the borrower released from any further liability on account of same, [and] the note, bond and deed of trust given to secure the loan will be satisfied and released."

The evidence shows that the value of the eight shares remaining, after deducting the one and a half shares that were bid as a

premium for the loan, the same being the shares that were issued to J. F. Woody, was, on the first day of July, 1887, $360, and the amount due on the note to secure the payment of which they were pledged at the time was $300.

According to the by-laws of the company, which were a part of the contract sued on, the owner of stock in class 'A,' after the payment of monthly dues thereon for sixty months, as they become due, is entitled only to the actual value thereof at the end of the sixty months. The provision in section 15 of article 6 for the payment of a balance due on a loan, if any is due, at the expiration of sixty months, clearly disproves the contention that the stock of appellee matured and the full amount thereof become due at the end of that time; for, according to section 7 of the same article, no loan could be made to a shareholder in excess of the par value of his stock, and no balance could be due on the loan at the expiration of the sixty months if the stock pledged to secure the same matured as appellee contends.

A paper purporting to be a prospectus of the Farmers & Mechanics' Savings Company was read as evidence. A part of it is as follows: "Our plan contemplates the building of homes and the accumulation of savings for any person who may become a stockholder. We have a fixed interest, a fixed premium, and a fixed time of maturity. Our stock consists of the following: All stock is one hundred dollars per share at maturity, and the membership fee is one dollar per share on class A and B. Class A, the payment is one dollar per share, payable on or before the fourth Saturday of each month. Has a positive maturity at the end of sixty months."

Appellee insists that it sustains her contention. But we do not think so. Other evidence shows that the sixty months mentioned in the prospectus was only an estimate of the time in which stock would mature, that is to say, reach its par value. One witness testified that it was believed and estimated that the loan of the money received in payment of monthly dues upon stock, interest and premiums, and the compounding of interest paid by reloaning the same, would mature stock in sixty months, and at the same time defray the expenses of the company; and that such would have unquestionably been the result in this case had all the borrowers faithfully performed their contracts and made prompt payment of their dues, interest and premiums; and that appellant failed to mature the stock of appellee in sixty months, as it reasonably expected to

do, on account of great and unforeseen losses sustained by it. The sixty months mentioned in the prospectus could not have been anything more than an estimate of the time in which the stock would mature. The ability of the company to maintain it—pay its par value—depended upon its receipts of monthly dues, interest, premiums, and fines. The amount of such receipts in the course of sixty months could not be foreseen, and any statements as to the time of the maturity of stock was necessarily an estimate. *Peoples' Building, Loan & Savings Association* v. *Morris,* 68 Ark. 24.

It follows, then, that appellee was entitled to a judgment for only sixty dollars, the excess of the value of stock over the amount due on the note it was pledged to secure, and six per cent. per annum interest thereon from the first day of July, 1897.

Reversed and remanded, with instructions to the court to render a decree in accordance with this opinion.