## HOUGH v. MAUPIN.

### Opinion delivered January 14, 1905.

1.  CONTRACT—LEX LOCI.—A contract dated and to be performed in Missouri is a Missouri contract, to be governed, construed and controlled by the laws of Missouri. (Page 520.)

2.  BUILDING AND LOAN ASSOCIATIONS — MATURITY — MISSOURI LAW.—In Missouri it is held that the fixing by a building and loan association of a definite period within which its shares will mature is subversive of the letter and spirit of the legislative scheme governing such associations, and beyond the power of its board of directors. (Page 521.)

3.  SAME — MISREPRESENTATIONS OF OFFICERS AND AGENTS — FRAUD.— Representations of the officers and agents of a Missouri building and loan association that the payments of members were limited in number to sixty monthly payments were not fraudulent where they amounted only to what the written contract provided, although such limitation was subsequently held invalid by the Missouri courts. (Page 522.)

4. SAME — INSOLVENCY.—In a suit by an insolvent building and loan association of another State to foreclose a mortgage on the property of a borrowing member resident in this State, where it appears that such member's stock was held by the association, he will be remitted to the court administering the association's estate or dividend for his *pro rata* or dividend on his stock payments, unless his right to participate therein has been barred by order of such court, in which case the value of such stock will be credited here on the judgment of foreclosure. (Page 522.)

Appeal from Fulton Circuit Court in Chancery.

JOHN B. McCALEB, Judge.

Reversed.

*Phillips & Kay,* for appellant.

The wife could not testify in the husband's defense. 37 Ark. 298. The mortgage was only an incident to the debt. 67 Ark. 260. The written contract must govern. 68 Ark. 30. The defendant must abide the consequences of his own inattention and carelessness. 11 Ark. 1058; 27 Ark. 244; 8 Am. & Eng. Enc. Law, 643; 31 Ark. 170. A fraudulent misrepresentation must be relied upon. 8 Am. & Eng. Enc. Law, 636. Every one is presumed to know the effect of a contract which he signs. 9 Ind. 488; 44 Ind. 243; 15 N. W. 242; 119 Ill. 567. Representations as to the legal effect of certain acts of a policyholder in forfeiting the policy to obtain a compromise by an agent are not actionable. 71 S. W. 252; 53 S. W. 231; 51 S. W. 530; 74 S. W. 161; 51 S. W. 406. A building association has no power to contract that shares of its stock pledged shall reach their par value within a fixed time. 73 S. W. 732; 48 S. W. 954. The fraud must be of an existing fact. 2 Add. Torts, 422; 68 Ark. 30. The defendant stands on the same footing as non-borrowing members. 37 S. W. 216; 36 S. W. 810; 68 Ark. 382.

*Sam H. Davidson,* for appellees.

The misrepresentations were actionable fraud. 22 S. W. 719; 116 Mo. 313; 62 Ark. 278. When a fraudulent combination is established, the acts and declarations of the parties while engaged in the common design may be proved against the others. 50 Ark.

287; 59 Ark. 265. Appellees were entitled to have their contracts rescinded *ab initio.* 62 Ark. 274. The defense of *ultra vires* must be pleaded. 70 S. W. 285; 73 S. W. 732.

HILL, C. J. The appellees became stockholders, for the purpose of borrowing, in the Farmers & Mechanics' Savings Company of Springfield, Mo., a building and loan corporation organized as such under the laws of the State of Missouri. Two loans were obtained, but for brevity herein they will be discussed as one.

An obligation or bond was executed secured by mortgage on real estate in Mammoth Spring, Arkansas. The bond is in the usual form of building and loan obligations, with this exception: It seems to limit the payment to 60 monthly payments of the amount therein set forth. The by-laws and prospectus are expressly made part of this obligation, and they make it clear that such is the purport of the obligation. It may be taken as established that this contract was for the payment of the sums therein stipulated as dues, premiums and interest for 60 months as full satisfaction of the advancement, instead of payment until the stock matured, thereby satisfying the advancement. Various representations of officers and agents were introduced into the evidence, but they only proved that the contract would be as above stated. The association failed, and executed an assignment. This is a suit by the assignee to foreclose the mortgage. The appellees answered, alleging fraud in that they were induced to enter into the contract upon the strength of the by-laws, prospectus and representations to the effect that 60 monthly payments of the dues, interest and premium would discharge the loan. The chancellor found in their favor, and the assignee appealed.

The contract is dated and to be performed in Missouri. Under frequent decisions of this court, this is a Missouri contract, to be governed, construed and controlled by the laws of Missouri. *Clark* v. *Taylor,* 69 Ark. 612; *Crebbin* v. *Deloney,* 70 Ark, 493; *Farmers' Saving & Building & Loan Association* v. *Ferguson,* 69 Ark. 352; *Bank of Harrison.* v. *Gibson.* 60 Ark. 269; *Sawyer* v. *Dickson,* 66 Ark. 77.

This court must turn from any original determination of the rights flowing out of the contract, and ascertain, if possible, their construction by the courts of that State.

Building and loan corporations are organized under statutes in Missouri especially providing for their existence and giving them certain rights and privileges and imposing certain limitations.

In case of *Bertche* v. *Equitable, etc., Assn.,* 147 Mo. 343, the Supreme Court held that a building and loan association could not fix an arbitrary period within which the shares of its stock will mature, and that such fixing of a definite period is subversive of the letter and spirit of the legislative scheme governing building and loan associations, and beyond the power of the board of directors. This case was decided in 1898, long after the contract in this case was made, and it seems to be the first case so construing the building and loan law of that State. From the decisions in other cases it appears that other associations in the State had fixed periods as well as the one now before this court.

This decision is followed by the two Courts of Appeals of that State in cases wherein other associations had fixed periods for payment. In *Caston* v. *Stafford,* 92 Mo. App. 182, the Kansas City Court of Appeals, after reviewing the Bertche case, said: "The statute requiring the borrowing stockholder to continue the payment of monthly dues until the stock reaches par is as much a part of the contract as if it had been written in the face of such contract. It results from this that, with the elimination of the *ultra vires* agreement [in that case the payment for 84 months to cancel the loan] from the contract and the substitution of the statute in its stead, we have a contract which provides that at the end of any period of payment of the monthly dues the stock shall reach par, whether that period turns out to be 84 months, or a longer or a shorter one, it shall be redeemed and the deed of trust released. Any time arbitrarily fixed in a contract with the borrowing stockholder for the maturity of the stock and release of the security is but an assumed time at most; and if the stock does not mature at such assumed time, the borrowing stockholder, notwithstanding this, continues the payment of his monthly dues on his stock until it does reach maturity, at which time he will be entitled to the release of his security, and this, we think, results from the operation of the statute." In *Williams* v. *Verity,* 73 S. W. Rep. 733, the same court reiterated this principle. In *Gary* v. *Verity,* 74 S. W. Rep. 161, the contract provided that payment for 100 months of the stipulated

amount would entitle the stock to redemption, and its surrender would cancel the loan. The court said, after citing the numerous decisions on this point: "Respondents, regardless of that clause of the contract, were obliged to pay on their loan until it was discharged either by the maturity of the stock in the usual course of business or by a payment large enough to discharge it." And further said that such clauses were *ultra vires* and void, because in contravention of the rights of the other stockholders of the association.

Then it is seen that the Missouri law which construes this contract renders the clause in question void. The cases of *People's Bldg. L. & S. Assn.* v. *Morris,* 68 Ark. 24, and *Hough* v. *Woody,* 71 Ark. 104, while not to this exact point, are consistent in principle with these cases.

But the Missouri courts do not hold the contract void on this account. They eliminate this clause, and read in place of it the Missouri statute which, in effect, requires payment till the stock becomes par, and then the loan is cancelled, whether that occurs before or after the period attempted to be fixed in the contract.

The appellees insist that the representations of the officers and agents inducing them to become members constituted a fraud, and the chancellor adopted that view. This was error. These representations amounted only to what the written contract provided. Appellees received exactly the contract the officers and agents represented it would be. Subsequently a part of that is held invalid by the Missouri courts. Appellees were as much bound by the Missouri law as the officers of the association; they sought the benefit of a Missouri contract, and must carry its burden. There is no showing that these officers knew the Missouri law, and took advantage of appellees' ignorance of it. On the contrary, the course of business shows that all its contracts were similar to this one, and it is shown by the decisions that several other Missouri associations had similar contracts.

When a building and loan association is insolvent, the rule to ascertain the amount due is declared in *Hale* v. *Phillips,* 68 Ark. 382. The Missouri courts adopt the same rule. *Brown* v. *Archer,* 62 Mo. App. 277; *Woerheide* v. *Johnston,* 81 Mo. App. 193; *Reitz* v. *Hayward,* 73 S. W. Rep. 374. The borrowing stockholder, under this rule, is remitted to the court administering

the insolvent association's estate for his *pro rata* or dividend on his payments on his stock. * In this case it appears that the stock is in the hands of the association, and was prior to its passing into the hands of the assignee. It also appears that the assignee gave notice to appellees to present their claims within a certain period. If the court administering the estate has not, pending this litigation, barred appellees' right to participate in the dividends, then appellees are remitted to it for their *pro rata* distribution as stockholders. If, however, they have been barred as indicated, the court, on the final hearing herein, must ascertain the value of such stock, and credit it on the judgment herein, for this reason: that it would be inequitable for the association and its assignee to hold the stock of appellees and not protect their interests in the distribution. It was collateral security to this loan, and, *pro tanto,* must be applied upon it, if the condition of the association's estate is not such that these appellees may participate as other stockholders.

The decree is reversed, and the cause remanded, with directions to foreclose the mortgage and ascertain the amounts due as herein indicated.