CASE 12—PETITION EQUITY—SEPT. 15.

# Herbert, &c. v. Kenton Building and Saving Association of Covington.

### APPEAL FROM KENTON CHANCERY COURT.

1. BUILDING ASSOCIATION LOANS—USURY.—The act incorporating the Kenton Building and Saving Association empowers the stockholders to make a constitution and by-laws not inconsistent with the constitution of the United States or the laws and constitution of Kentucky.

   *Certain portions of the constitution and by-laws of said association are held to be in conflict with the provisions of the Revised Statutes in relation to usury,* and therefore invalid as to a contract made while said law was in force.

2. A HOMESTEAD EXEMPTION IS NOT WAIVED by the wife merely joining with her husband in a mortgage of his property "to relinquish her right of dower." (Wing v. Hayden, 10 Bush, 276; Robbins v. Cookendorfer, *Ibid.* 629.)

R. D. HANDY, . . . . . . . . . . For Appellants,

CITED

2 Session Acts 1869–70, page 169.

CLEARY & SCOTT, . . . . . . . . . For Appellee,

CITED

Act of March 10, 1870, incorporating appellee.
1 Exch. R. 494.
6 Bing. M. C. 180, Silver v. Barnes.
6 Hare, 87, Wadley v. Baker.
1 DeGex, McM. & G. 783, Seagrave v. Pope.
8 Eng. L. & E. 57, Burbridge v. Cotton.
3 Stockton, 382, Savings Ass'n v. Vandevere.
6 Allen 1, Delano v. Wild, &c.
1 Duvall, 143, Sayre v. The Lou. Ben. Ass'n.
2 Bush, 254, Lee v. The Lou. Pilot Ass'n.
25 Barbour, 253, Citizen's M. L. Ass'n v. Webster.
21 Ga. 592, Bibb Co. L. Ass'n v. Richards.
43 N. H. 194, Shannon v. Dunn.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

By the 3d section of the act to incorporate the Kenton Building and Savings Institution (Session Acts 1869–70, vol. 2, p. 169) the stockholders are empowered " to make a constitution and by-laws, and to ordain such rules and regulations as they may deem proper and necessary for the management of said society, and to alter or amend them at pleasure;" but they are inhibited from making a constitution or by-law contrary to the constitution of the United States or the laws and constitution of Kentucky.

By the 5th section the society is authorized " to assess and collect, at such times and upon such terms as they may deem proper and expedient, such contributions, dues, fines, etc., from its members, as they may deem necessary and proper to carry out the objects of this association."

The 6th section declares that the objects of the association are " to afford its members a safe depository for their weekly earnings, and a safe investment for their savings; to loan its accumulated funds and weekly deposits to its members or others; to afford relief to its members by advancements or otherwise in building and securing houses and homes, etc.; and to this end it shall have and exercise all such powers as may be necessary, not contrary to the constitution of Kentucky."

The constitution of the association fixes the shares at $400, and provides that they shall be paid for by weekly installments of $1.05 per share, and that at the dissolution of the association the shareholders shall be entitled on each share to the sum of $448.

Article 10, section 2, then provides that " in case a member wishes to buy this share before the dissolution of the association he shall receive but $400 for the first year, $408 for the second year, $416 for the third year, and so on for every succeeding year in the same proportion, which amount shall,

however, not exceed the sum of $448. Each member having received his proper proportion, shall thereby lose all further claim against the association."

Section 3: "Every week, or as often as there is $400 at disposal for the first year, $408 for the second year, $416 for the third year, and so on for every succeeding year, the money shall be sold to the highest bidder among the members. . . . The member paying the highest premium shall receive payment of as many shares as he owns, at the rate specified above, after deducting the premium, or as many less as he may choose. The capital loaned must bring six per cent interest per annum to the date of the dissolution of the society, interest payable on the first Tuesday of the month, and is chargeable as soon as any part of the money is ready to be delivered to the buyer. All advanced loans must be secured by mortgage on real estate. . . . Mortgages are taken to secure the payment of the weekly dues on the shares of stock owned by the member who has received the advanced loan, the payment of the fines and forfeitures assessed by the association, and of the taxes, ground rents, and fire insurance on the property mortgaged. Should the member fail to pay one or more of these within ninety days after the same shall become due, then the mortgage shall be foreclosed according to law. . . . . Every member receiving such loans shall give a mortgage for double the amount of his share or shares, to be in force until every member shall have received satisfaction of his claim upon advancements of moneys to which he may be entitled, whereupon such mortgage shall be canceled."

In September, 1870, the appellant, Lewis Herbert, who had subscribed for four shares, purchased them in from the association. It being the first year of its existence, he was entitled to $400 per share, or $1,600 for his said four shares. He agreed to pay a premium of $308; consequently he received in money only $1,292. In consideration of this sum he executed

his note, due one day after date, for $1,600. Said note was secured by a mortgage on real estate situated in the city of Covington.

He had the right, under the constitution, to discharge this note by weekly payments of $4.20. He was bound, however, to pay interest on the face of the note at the rate of six per cent per annum, which interest was to be paid monthly. The weekly payments were not entered as credits on the principal indebtedness, nor did they operate to. reduce the amount of interest to be paid. Consequently if he had continued to pay up his weekly installments until the principal sum was reduced to less than $100, the association would still· have exacted the payment of $8 each month in the way of interest. Further than this, when Herbert accepted the $1,292 he lost all further claim against the association. He was bound to comply with the terms of his subscription for stock, and was subject to all the penalties which could be imposed upon members of the association, but could claim no participation in any profits that might thereafter be realized.

The chancellor was of opinion that at the dissolution of the association he would be entitled to have the difference between the face of his note and the sum advanced to him made up, and also to receive the contemplated $48 profit on each share. But if such were the case he would not have lost all further claim on the association, as provided by section 2, article 10, of the constitution. The association does not so construe its constitution and by-laws. In its petition in this case it states that "upon having the shares advanced it was agreed and the by-laws provided that the members receiving the money therefor should continue to pay their regular dues on said shares and interest on principal payable monthly until the general fund of the association was found sufficient to pay off all remaining shares, at which time the association shall be dissolved." The dissolution of the association as soon as the

*remaining shares* can be paid off precludes the idea that it is to be held together for the benefit of a member who has bought out his shares prior to the time indicated.   But the dissolution upon the contingency mentioned is consistent with the declaration that the purchase of the shares in advance deprives the member of all further claim on the association.

It appears that Herbert paid to the association in the way of dues $365 and in the way of interest $97.40, and yet on the 8th day of June, 1874—three years, eight months, and eighteen days after the execution of his note—judgment was rendered against him for $1,600, with interest from the 20th of November, 1871; also for $155.40, with interest from March 1st, 1872; also for $28.80, and also for $8; amounting, in the aggregate, to over $1,900; while the sum actually received, with simple interest, amounted to no more than $1,580.54.   If this judgment be enforced, Herbert will be compelled to pay over $1,900, and to lose the sum of $462.40 already paid in the way of dues and interest.   If he had borrowed the $1,292 from a private individual, he might have satisfied his creditor by the payment of the sum of $1,580.54.   Yet if the act of incorporation authorizes the association to make the constitution under which this transaction was had, we can not say that the judgment was erroneous.   But said act limits the power of the association, by providing that its constitution and by-laws shall not be contrary to the constitution and laws of Kentucky.

Now at the time the act of incorporation was passed, and at the time of the making of the contract with Herbert, the general laws of this state prohibited parties from contracting for a greater rate of interest for the loan or forbearance of money than six dollars upon one hundred dollars for one year. It therefore follows that if the contract with Herbert was a loaning of money it was usurious in its character.

Waiving the consideration of the alleged right of the asso-

ciation to impose fines for the non-payment of dues and interest, and stripping the transaction of the duties and penalties imposed upon Herbert in his character as a member of the association, we find that when he purchased the right to have the aggregate sum of his four shares of stock advanced to him he really contracted to borrow from the association, to be paid in weekly installments, $1,292, and that he undertook, in consideration of this loan, to pay to the association, in addition to his dues at the end of each month, the legal interest on $1,600; the association having the right, in default of such payments, not only to impose upon him fines and amercements, but also to sue for and collect the whole amount of the unpaid portion of the note. And further than this, that by accepting the loan he released all claim against the association.

The premium paid for the loan, the interest he contracted to pay, and the profits realized by the business of the association, are to be held by it for the benefit of the stockholders who do not purchase out their shares in advance of the final settlement of its affairs. The only advantage that Herbert can realize from the payments he may make is that they will assist in creating a fund sufficient eventually to authorize him to demand that the association shall be dissolved. It is true, he remains a member for the purpose of assisting in the management of the affairs of the organization, but the most that he can hope to secure through his right to participate in this management is the reduction of the amount of usurious interest he has contracted to pay.

If his contract with the association be enforceable, he can discharge himself from liability to it in no other way than by the payment of more than $600 of usurious interest. This fact does not result alone from his failure to make payment of his dues and the interest on the loan, in accordance with the terms of his contract. The chancellor states in his opinion that it is contemplated by the members that the association

will continue in existence six years from the time of its organization. If this estimate shall turn out to be correct, then Herbert could have performed his contract by the payment of three hundred and twelve weekly installments of $4.20 each, amounting in the aggregate to $1,310.40, and of say sixty-six monthly installments of interest of $8 each, aggregating the further sum of $576. Allowing him simple interest on the amounts thus paid from the end of each period of six months, and it will be found that at the end of the six years he will have paid to the association more than $2,100. If he had borrowed the sum actually advanced to him from a private individual, the legal interest would in the same time have increased the amount of his debt to less than $1,700.

But counsel argue that it is not impossible that the association may be in a condition to dissolve at the end of five years. This is altogether improbable; but if it should turn out to be true it may reduce the amount, but can not exonerate Herbert from the payment of usurious interest. He will still be compelled to pay nearly $100 more than the legal interest on the sum advanced to him.

We are cited to cases in which transactions similar to this have been held not to be usurious in their nature.

It was practically so held in the case of Selver v. Barnes (6 Bingham, N. C. 180), by the English Court of Common Pleas in 1839. The court treated the association as a *quasi* partnership, and the transaction as an advance of partnership funds. The line of reasoning by which this conclusion was reached is not given in the opinion of the court.

Subsequent to this adjudication the rights, duties, and powers of these associations were defined by act of parliament, and the case of Seagrave v. Pope (1 De Gex, McN. & Gordon, 800) arose out of a transaction with an association organized and doing business under the statute.

In the case of The Savings Association v. Vandermere

(3 Stockton) the statute declared that the premium paid for the loan or advance should not be regarded as usury; and while the interest on the amount of the note executed could be collected, the principal of the note was in no contingency to be paid.

In Delano v. Wild, &c. (1 Allen, p. 1) the party who purchased his stock in advance did not agree to do more than to continue the payment of his dues and to pay legal interest on the sum actually advanced to him.

In the case of The Citizens' Mutual Loan Association v. Webster (25 Barbour, 269) the decision turned upon the statutes of the state of New York.

In the cases of Shannon v. Dunn (43 N. H. 196) and Parker v. Fulton Loan & Building Association (46 Ga. 166) it was held that the contracts were not usurious upon their faces, and that the question whether they were devices to evade the usury law was an issue of fact to be determined upon trial.

In the last-named case the court, upon the assumption that the association would continue in existence no longer than six years, demonstrated by actual calculation that the complainant would not be required to pay as much as legal interest on the money actually received by him. In the same case some importance was attached to the fact that the transaction was in the nature of a risk, and that the borrower or the seller of the stock might not be required to repay even as much as the sum advanced to him, with legal interest.

We have shown that in Herbert's case this element of risk is wholly wanting. Under the most favorable circumstances a strict compliance with his contract would not have enabled him to escape the payment of usurious interest. The mere statement of the plan of operations adopted by the appellee develops the fact that it is a scheme or device to evade the usury laws. When it commenced operations six per cent per annum was the highest rate of interest authorized by law, and

the loan to Herbert was made before the rate of interest was allowed to be increased by special contract to ten per cent per annum. It was provided that at the end of the time during which the association should do business each shareholder should receive for each share he might own $448.

During the term of six years a party who declined
to purchase out his shares in advance will pay in
$1.05 per share per week, . . . . $327.60
Three years' interest on this sum, or six years' interest
on one half thereof, will amount to . . . 58.96
                                                         ———————
        Total, . . . . . . . $386.56

Deduct the sum thus found from $448 and it will be seen that he will receive $61.44 more than legal interest on the money actually paid in. This calculation is made upon the basis that the fines and amercements collected will pay the current expenses of the association.

If the association terminates at the end of five years the shareholders declining to purchase out their shares in advance will receive on each share nearly double said sum in excess of legal interest.. Now it is perfectly manifest that those who purchase in advance or borrow the funds of the association must pay this usury.

We see no reason why the fines assessed against Herbert up to the date of the institution of this action for the non-payment of dues may not be collected, but the transaction resulting in the execution of the note and mortgage must be treated as a loaning of money for usurious interest.

The mortgage does not pass the homestead exemption. Mrs. Herbert states expressly that she joined in its execution to re-liquish her right to dower, and she did not by so doing waive the exemption. (Wing v. Hayden, 10 Bush, 276; Robbins v. Cookendorfer, *Ibid*, 629.)

If the realty is not susceptible of partition, then $1,000,

the value of the homestead exemption, will be set apart for the benefit of appellants.

The judgment is reversed, and the cause remanded for further proceedings consistent with the views herein expressed.