Weir's Trustee, et al. v. Weir.

CASE 103.—ACTION BY HARRIET P. WEIR AND ANOTHER
    AGAINST ALICE C. WEIR.—June 17, 1910.

## Weir's Trustee, &c. v. Weir.

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From a judgment of dismissal, plaintiffs appeal.—
Reversed.

1.  Estoppel— Ownership  by  Mortgagor— Representations.—
    Where a mortgagor, having only a life estate, but believing
    that he owned the fee, mortgaged the property and repre-
    sented to the mortgagee that he owned the fee and the
    mortgage was foreclosed, and the land bought in by the
    mortgagee, the mortgagor, on acquiring the outstanding title,
    was estopped from relying thereon as against the mort-
    gagee.
2.  Homestead—Conveyance—Release of Dower.—A homestead
    does not pass by deed or mortgage where, in the deed or
    mortgage, the wife only released her dower.
3.  Homestead—Rights of Debtor.—Under the rule that a debtor
    entitled to homestead can be divested of it only in the stat-
    utory method, the failure of a mortgagor, not waiving or con-
    veying the homestead, to assert his right to homestead in an
    action to foreclose the mortgage, did not operate to divest
    him of his homestead right, especially where the property
    was sold subject to the homestead right, so that the mort-
    gagor's widow was entitled to homestead.
4.  Homestead—Abandonment—Evidence.—Where one occupied
    premises as a place of residence for nearly 40 years until
    his death, and thereafter his widow and sole devisee under
    his will continued to occupy it continuously, the homestead
    right was not abandoned.

JONSON WICKLIFFE & JONSON and W. H. YOST for appel-
lants.

WILLIS & MERIDETH, BROWDER & BROWDER and HU-
BERT MERIDETH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

James Weir, deceased, in his day a leading citizen of Greenville, Ky., by his will devised the house and lot in controversy in this case and other real estate to his daughter, Anna Elliott, for life, with remainder to her five children, Richard Elliott, Frank Elliott, J. W. Elliott, Henry Elliott, and Anna R. Devine, wife of Wm. E. Devine. December 15, 1869, Anna Elliott and Edward R. Elliott, her husband, sold and by deed conveyed the house and lot in question to her brother, Edward R. Weir, Jr., of Greenville. The deed purported to convey the fee to the property and both the vendors and vendee believed it had done so, but, as Mrs. Elliott only owned a life estate therein, such life estate was all that actually passed by the deed to the vendee. Edward R. Weir, Jr., together with his wife and children, moved upon and took possession of the house and lot immediately after his purchase of it, and he and his family continued to occupy it as a homestead until his death, which occurred March 30, 1906. Edward R. Weir, Jr., was twice married. The first wife, Eliza Weir, died about 10 years after he received the deed from Mrs. Elliott, and his marriage to the second wife the appellee, Alice C. Weir, occurred some years later. She survived him and is yet occupying the house and lot with her family. In March, 1872, Edward R. Weir, Jr., and his then wife, executed to the Deposit Bank of Owensboro a mortgage upon all the property conveyed him by Mrs. Elliott to secure the payment of a note he gave it for $8,000, money borrowed of it. The mortgage was duly acknowledged and recorded. It is apparent that the officers of the

bank supposed Edward R. Weir, Jr., owned the fee, and not merely a life estate, in the property. The mortgage, however, did not include or convey the homestead right of the mortgagor in the real estate, nor did it contain a covenant warranting the title to the property. Manifestly the bank by the mortgage in question acquired only a lien upon the life estate Mrs. Elliott had formerly owned in the property, subject to the homestead right of the mortgagors. At the time the mortgage was executed to the Deposit Bank, Edward R. Elliott held a vendor's lien upon the property it covered to secure the payment of a note of $1,000, which Edward R. Weir, Jr., executed for a balance of the purchase money due Mrs. Elliott upon the property; the deed from her retaining the lien to secure its payment. This note Mrs. Elliott assigned to her husband Edward R. Elliott, who later transferred and delivered it, without a written assignment, to Edward R. Weir, Sr., of Owensboro, an uncle of Mrs. Elliott and Edward R. Weir, Jr. March 25, 1873, the Deposit Bank brought suit in the Muhlenberg circuit court against Edward R. Weir, Jr., his wife, Eliza Weir, Edward R. Elliott, Edward R. Weir, Sr., and Peter Lamb, in which judgment was sought against Edward R. Weir, Jr., and for the enforcement of the bank's mortgage lien by a sale of the mortgaged real estate, to pay, first, the lien note of Edward R. Weir, Sr., for $1,000, and, second, the bank's mortgage debt of $8,000. Edward R. Elliott was made a party to the action because he had not formerly assigned the $1,000 note to Edward R. Weir, Sr., and the latter because he was the owner of the note. Peter Lamb was made a defendant because he owned an interest in a part of the real estate.

The answer of Edward R. Weir, Sr., set up the ma-
turity and nonpayment of the $1,000 note, asked judg-
ment therefor, and the enforcement of the vendor's
lien for its payment. Soon after the institution of
the action, it seems to have been consolidated with
five others pending in the same court against Edward
R. Weir, Jr. Following the consolidation, the causes
were submitted and by the judgment rendered all the
mortgaged property, including the house and lot in
question, was ordered sold to satisfy, first, the $1,000
note of Edward R. Weir, Sr.; secondly, the bank's
mortgage debt of $8,000; thirdly, the debts of other
creditors not necessary to further refer to, as they do
not affect the issues now to be considered. The judg-
ment was silent as to the right of E. R. Weir, Jr., to
a homestead in the property sold.

June 30, 1873, the property was sold by the com-
missioner pursuant to the judgment and purchased
by Edward R. Weir, Sr., subject to the homestead
right of Edward R. Weir, Jr., therein. The report of
the commissioner as to the sale of the property in
controversy is as follows: "Your commissioner then
offered the lot mentioned in said judgment as front-
ing 73 feet on Main street and running back to Camp-
bell's alley in Greenville, Ky., on which is situated
the two-story brick dwelling now occupied by the de-
fendant E. R. Weir, Jr., together with the vacant lot
lying in the rear of the corner brick storehouse, and
the highest offer received was by E. R. Weir, Sr.,
$5,000, in addition to which said E. R. Weir, Sr., was
to satisfy the homestead claim of E. R. Weir, Jr.,
and wife. Your commissioner would report that he
then by direction of M. D. Hay, attorney for plaintiff
Deposit Bank, and by direction of the defendant, E.
R. Weir, Jr., offered said dwelling house and lot as

,Weir's Trustee, et al. v. Weir.

mentioned aforesaid, together with the vacant lot ly-
ing in the rear of the brick store and the lot lying be-
tween said dwelling and Longstreet fronting 106 feet
on Main street and running back to Campbell's alley,
*   *   * and the highest bid received was $1,100, and
was offered by E. R. Weir, Sr., and in addition to
which E. R. Weir, Sr., was to satisfy the homestead
claim of E. R. Weir, Jr., and wife." The report of
sale was confirmed by the court, and on April 29,
1879, E. R. Weir, Sr., purchaser of the property at
the decretal sale, assigned of record his bid therefor
to the Deposit Bank, which thereupon became the
owner of the property. By the decretal sale, the
vendor's lien for $1,000, in favor of E. R. Weir, was
satisfied, a part of the bank debt extinguished and the
homestead right of E. R. Weir, Jr., in the property
preserved. By an order of the court the commissioner
by deed of date September 24, 1879, conveyed the
property purchased by E. R. Weir, Sr., at the de-
cretal sale to the Deposit Bank. The deed contains
the following clause: "Said two-story brick dwelling
house and lots upon which it is situated and the said
lot lying in the rear of the said brick storehouse and
attached to said dwelling house and lots, and the
said lot lying between the said dwelling house and
lot and Long street and fronting on Main street, are
all conveyed subject to the right of homestead of E.
R. Weir, Jr., herein." The deed from the commis-
sioner was approved by the court, accepted by the
grantee, Deposit Bank, and duly recorded. By deed
of date November 30, 1883, the Deposit Bank con-
veyed the real estate in question to Max Weir & Co.,
a partnership composed of Max Weir and Harriett
Weir, his mother. Max Weir was a brother
of E. R. Weir, Jr., though whether they were

children of the same mother does not appear. The deed from the Deposit Bank to Max Weir & Co., which was accepted and duly recorded, contains the following express reservation: "Said two-story brick dwelling and the lot upon which it is situated and the said lot in the rear of the brick store and attached to said dwelling and lot, and the said lot lying between said dwelling and Long street are all each conveyed subject to the right of homestead of E. R. Weir, Jr., therein."

In 1904 Max Weir died, leaving a will which was duly probated, and by the provisions of this will his interest in the real estate in controversy was devised to his mother, Harriett R. Weir, but the will makes no mention of E. R. Weir, Jr.'s right of homestead in the property. December 2, 1904, Harriett Weir conveyed this property with other real estate to her son, Miller Weir, trustee. Anna R. Elliott died in 1906. When E. R. Weir, Jr., died, March, 1906, he also left a will by which he devised to his surviving wife, the appellee, Alice C. Weir, the property in controversy. The will was duly admitted to probate. Shortly after the death of E. R. Weir, Jr., this action was instituted by Harriett R. Weir and Miller Weir, her trustee, against Alice C. Weir to recover, as in ejectment, the real estate in controversy; but, after the filing of the latter's answer, the case was transferred to the equity docket, and tried as a cause in equity. By the judgment rendered the chancellor dismissed the petition, and that ruling gave occasion for this appeal.

We have already said that E. R. Weir, Jr., by the deed of December 15, 1869, from Anna R. Elliott and her husband, acquired only the life estate of Mrs. Elliott in the property conveyed, the owners in re-

Weir's Trustee, et al. v. Weir.

mainder being her children, Richard, Frank, Henry, J. W. Elliott, and Anna R. Devine. On June 27, 1874, Richard Elliott and wife and Frank Elliott by their joint deed of that date conveyed to E. R. Weir, Jr., the undivided two-fifths interest of Richard and Frank as remaindermen in the property in controversy, and by the same deed also conveyed to one F. B. Hancock a like interest they owned as remaindermen in certain lands in which he had theretofore by purchase and deed acquired their mother's life estate. By a deed of date October 26, 1876, J. W. Elliott attempted to convey E. R. Weir, Jr., his undivided one-fifth interest in remainder in the property in question, and on October 23, 1882, Henry Elliott by deed conveyed his undivided remainder interest of one-fifth in this property to E. R. Weir, Jr. The undivided one-fifth interest therein, owned by Anna R. Devine, she attempted on December 16, 1877, to convey E. R. Weir, Jr., by deed in which her husband joined.

The circuit court was of opinion, and adjudged, that the deeds from Richard, Frank, and Henry Elliott to E. R. Weir, Jr., were valid conveyances, but that those from Anna R. Devine and husband and J. W. Elliott were void for uncertainty, and that as the deeds from Richard and Frank Elliott were executed to E. R. Weir, Jr., before he was divested of title by the commissioner's deed to the bank, whatever title he took under those deeds inured to the benefit of the bank and passed to it by the commissioner's deed, but that the deed from Henry Elliott passed to E. R. Weir, Jr., Henry's undivided one-fifth interest in the property, which upon the death of E. R. Weir, Jr., went under his will to appellee.

We think the court was right in its conclusions as

to the effect of the deeds upon Richard and Frank Elliott, but, if the deeds from Anna R. Devine and J. W. Elliott had also been valid, we think whatever title E. R. Weir, Jr., acquired under them and the deed from Henry Elliott, would also have inured to the benefit of and passed to the bank, although the deed from Henry was made after the commissioner's deed. In other words, E. R. Weir, Jr., after giving the bank a mortgage upon real estate to which he believed, and represented to it, he owned the absolute fee-simple title, would not be allowed, following a foreclosure of the mortgage, its purchase by the mortgagee and conveyance to it by commissioner, upon discovery that others had a better title to the property, to acquire same and by virtue thereof defeat the title of the mortgagee obtained under the lien sale and commissioner's deed. In such a state of case the doctrine of estoppel should apply with full force. We are satisfied that at the time of the death of E. R. Weir, Jr., the only valid interest he owned in the property was a homestead right. This right was not waived or conveyed by the mortgage he and his first wife executed to the Deposit Bank. It is true the mortgage in terms shows the release of dower by the wife, but it is well settled that the homestead will not pass, if it appears in the deed or mortgage that the wife only released her dower. Wing v. Hayden, 10 Bush, 276; Herbert v. Kenton, 11 Bush, 296; Hayden v. Robinson, 83 Ky. 615.

There is no merit in appellant's contention that E. R. Weir, Jr., in failing by answer to assert his right to a homestead in the action under which the property was sold, waived and lost such right. This can not be true, for the debtor entitled to homestead can be divested of it only in the statutory method; be-

sides, in this case, though E. R. Weir's right to the homestead does not seem to have been recognized by the judgment, the property was sold subject to such right, and the commissioner's deed to the bank, as assignee of the purchaser, and that of the bank to Max Weir & Co., expressly reserves it for his benefit. This being true, the appellee, Alice C. Weir, as the widow of E. R. Weir, is entitled to the homestead, and the appellees, who are vendees of the bank, can have no greater right to defeat her claim to such homestead than the bank could have enforced, had it continued the owner of the property. There can be no claim that E. R. Weir, Jr., or either of his wives during his life, abandoned his right of homestead, or that appellee, his last wife and surviving widow, has done so since his death. On the contrary, it is not disputed that E. R. Weir, Jr., and his family occupied the property as a place of residence from December 15, 1869, until his death, March 30, 1906, and that the appellee, as his widow and the sole devisee under his will, has occupied it continuously since his death.

There is no ground upon which to rest appellee's claim of ownership of the property on account of adverse possession of more than 15 years. While as stated appellee's and her husband's possession of the property cover a much longer period than 15 years, the statute of limitation can interpose no bar in this case. The possession of E. R. Weir, Jr., while he lived and that of appellee since his death, was by virtue of their right to a homestead. This we think fairly established by the evidence as a whole. If the right of homestead had not been the sole basis for their possession, we take it for granted E. R. Weir, Jr., would have resisted the sale to Row by the ven-

dee of the decretal purchaser of a valuable lot from the property fronting on Main street, upon which Row built a house that has since been occupied by his tenants without objection from Weir while living, or from appellee since his death.

Our conclusion, therefore, is that appellee as the widow of E. R. Weir, Jr., and devisee under his will, is entitled to a homestead in the property, nothing more, and, upon the return of the case to the circuit court, that court should appoint commissioners to allot her the homestead; but, if the property is not susceptible of division and worth more than $1,000, it should be sold and the value of her homestead paid her in money.

For the reasons indicated, the judgment is reversed for further proceedings consistent with the opinion.